STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JOHN SLOBODIAN, DEFENDANT-APPELLANT.

Argued May 18, 1970—Decided September 2, 1970.

*Mr. Ronald W. Bronstein* argued the cause for appellant (*Messrs. Goodman & Rothenberg,* attorneys).

*Mr. Archibald Kreiger,* Assistant County Prosecutor, argued the cause for respondent (*Mr. Joseph D. J. Gourley,* Passaic County Prosecutor, attorney).

PER CURIAM. Defendant was convicted of murder in the second degree in the Passaic County Court and sentenced to 14 to 15 years imprisonment. The judgment was affirmed by the Appellate Division in an unreported per curiam opinion. This court granted certification. 55 *N. J.* 167 (1969).

After argument we directed the trial judge to certify whether in considering the admissibility of two alleged confessions, he had passed on the *Miranda* problems involved and the voluntariness of the confessions. We further requested that he make and file detailed findings of fact with respect to those issues. In response to the requests, the trial judge certified that on the *voir dire,* out of the presence of the jury, he considered both the *Miranda* and voluntariness questions in passing on the admissibility of defendant's statements. More specifically, he found that the *Miranda* warnings were given prior to both confessions and that defendant made an effective waiver of his rights because he confessed immediately after the warnings were given.

It is uncontroverted that defendant requested counsel prior to his first interrogation but that no lawyer was present during either interview. The trial court made no express ruling on the effect of the failure to comply with the request and the continued questioning after that request. The absence of any such ruling on the effect of that request and the continued questioning of defendant after an un-

successful attempt to contact his lawyer, may be explained by the fact that this testimony was not disclosed on the *voir dire* but rather upon cross-examination when Lieutenant Lumley, the questioner, testified before the jury.

The transcript submitted by defendant contained only the testimony relevant to the admissibility of defendant's confessions. At argument, counsel were directed to furnish this Court with a complete transcript in order that the question of prejudice could be considered, in the event it were determined that either confession had been improperly admitted. We now have that record.

The uncontroverted facts adduced at trial are that: Defendant was tending bar in a tavern owned and operated by him in the City of Passaic at about 11:00 P.M. of March 1, 1968. Three customers were then at one end of the bar. Defendant's estranged wife, who had arrived at about 9:00 P.M., was seated at the other end of the bar. In effect, all three customers testified that the atmosphere was pleasant and relaxed. At about 11:00 P.M., defendant bought the three a drink, chatted with them for a few minutes and then moved to the other end to converse with his wife. The three continued their conversation. They suddenly heard a shot and saw the wife of defendant slump over. All three left the tavern. One of them called the police who arrived shortly thereafter and were admitted by defendant.

Defendant was taken to police headquarters where questioning was undertaken by a Lieutenant Lumley who had been friendly with defendant for some years past. At about 11:50 P.M., Lumley made notes of the interview but did not prepare a formal written statement. These notes read in part that defendant said:

"I had a gun in my pocket, a .22 caliber; had argument with Olga. She called me chicken. I told her I was going to harm her. If you do something wrong to me. I took the gun out of my pocket. She was sitting at the bar and I served her a drink.

\*      \*      \*      \*      \*      \*      \*      \*

I served her a double shot of vodka, a shot of dry vermouth. She

called me to have a drink. I can't drink, she said. She called me chicken. She called me everything. I said I am going to shoot you one of these days. I took the gun out of my pocket and shot it at her. She fell off the stool and I ran outside. The people left. They were scared."

On cross-examination on the trial before the jury Lieutenant Lumley admitted that prior to his questioning, the defendant had "talked about wanting Mr. Keegan [his lawyer]" and although an attempt was made by Lumley, Keegan could not be contacted. However, Lumley continued his interrogation in the absence of the requested attorney. When the foregoing was disclosed, defendant's counsel objected to the admissibility of the oral statement and requested the trial judge to reverse his earlier determination of admissibility on the ground that defendant had not waived his right to counsel. The court denied the motion.

A second statement, reduced to writing and which defendant signed, contained the following:

"I had a gun in my pocket, a .22 caliber. I had an argument with my wife Olga and she called me chicken. She said that I wouldn't do what I pretended to do. I told her I would harm her, but I did not tell her that I would shoot her. I took the gun out of my pocket. She was sitting on a chair and asked me for a drink. I served a double shot of vodka and one shot of dry vermouth. Later on she called me for a drink.

\*        \*        \*        \*        \*        \*        \*        \*

I said to her I wouldn't have a drink with her because I had to stay up until 3:00 A.M. She called me anything [sic.] later on and then she called me a chicken and she said I wouldn't have a drink with her. Then she was at the bar and I told her that she called me a chicken and I would shoot her one day. I then took the gun out of my pocket and I shot the gun. She fell off the stool and I ran outside of the tavern. All of the people left. They got scared, too."

We are concerned with the admissibility of the first confession and in the event it is determined to be inadmissible, the effect of the denial of the above noted motion.

In *Miranda v. Arizona,* 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d 694 (1966), the court said at 384 *U. S.* 444–445, 86 S. Ct. 1612:

"The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning."

And again at 384 *U. S.* 474, 86 S. Ct. at 1628:

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and. he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

In *State v. Billingsley,* 46 *N. J.* 219 at p. 235, (1966), this Court said:

"In recognition of the more recent doctrine that the Fifth and Sixth Amendments are binding on the several states as well as on the Federal Government, we accept the view that if an accused in custody requests counsel before submitting to police interrogation or before making a confession, the questioning must be suspended until he has had an opportunity to obtain an attorney of his own choice, or if he is indigent, until an attorney is provided for him. If this course is not followed an incriminating statement obtained thereafter necessarily strongly suggests oppression and fundamental unfairness."

, In *State v. Smith,* 32 *N. J.* 501, at p. 509, (1960), this Court said:

"The judge should himself try the issue of voluntariness in the preliminary hearing and should exclude the confession if the State fails to prove it to be voluntary, and if he admits it into evidence, he should strike it if at a later stage involuntariness should appear."

██ Under the facts here present we are satisfied, as the State now admits, that the defendant did not knowingly and intelligently waive his right to counsel before making his statement to Lumley (see *State v. Yough,* 49 *N. J.* 587 (1967)), and that the testimony concerning that confession should have been stricken. See *State v. Smith, supra.*

However, the State argues that even though the first confession was inadmissible and should be stricken, there is adequate other evidence to sustain the conviction and the error was harmless.

It is to be noted that the two confessions above quoted are, on the vital issues, almost identical. No one can say what additional credit and weight the jury gave to the second confession because of the repetition and corroboration in salient features by the first.

We cannot under the facts here present declare that the federal constitutional error in admitting the oral confession related by Lieutenant Lumley was harmless beyond a reasonable doubt. See *Chapman v. California,* 386 *U. S.* 18, 87 S. Ct. 824, 17 *L. Ed.* 2d 705, (1967).

Accordingly, the judgment of conviction is reversed and the case remanded for a new trial consistent with the foregoing.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.