288 N.J. Super. 1 (1995)
671 A.2d 1045
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS J. LANE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1995.
Decided December 27, 1995.
*3 Before Judges BAIME, VILLANUEVA and KIMMELMAN.
Michael B. Jones, Assistant Deputy Public Defender, argued the cause for appellant (Susan L. Reisner, Public Defender, attorney; Mr. Jones, of counsel and on the brief).
*4 Deborah Bartolomey, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General of New Jersey, attorney; Ms. Bartolomey, of counsel and on the letter brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Defendant Thomas J. Lane appeals from his convictions of reckless manslaughter, N.J.S.A. 2C:11-4b(1), death by auto, N.J.S.A. 2C:11-5, and various motor vehicle offenses. We affirm.
At about 2:00 a.m. on April 4, 1992, at the intersection of Route 27 and Juliet Lane in Franklin Township, defendant drove his Pontiac Trans-Am into the rear of a Honda CRX driven by Dr. Robert Ochner. Dr. Ochner was stopped at a red light in the right hand lane of a four-lane highway. The road was dry and visibility was good. Upon impact, the Honda was propelled into the intersection, where it spun around several times before coming to a stop on the northbound side of Route 27. Defendant's Trans-Am stopped when it hit a utility pole.
Prior to the collision, Leonard Cacciatore, who was stopped next to Dr. Ochner in the left lane, noticed defendant's car approaching from behind in the right-hand lane. The posted speed limit was 40 miles per hour, but Cacciatore estimated that defendant's Trans-Am was going about 60 miles per hour. Cacciatore testified that he never heard the sound of brakes being applied before the collision.
A Somerset County Grand Jury returned an indictment charging defendant with aggravated manslaughter, N.J.S.A. 2C:11-4a (count one), and death by auto, N.J.S.A. 2C:11-5 (count two). Defendant was also charged with several motor vehicle offenses.
The State attempted to show that defendant's car struck the victim's Honda before the red light turned green. The State's expert in accident reconstruction, William Pauli, opined that defendant's car was traveling at about 54 miles per hour when it *5 struck the victim's car. No skid marks were made by defendant's car prior to hitting the victim's car. Neither defendant's car nor the victim's car had any mechanical defects that would have affected operation of either car.
Christopher Santi arrived on the scene shortly after the collision and helped defendant out of his car. Santi smelled a strong odor of alcohol emanating from defendant, and asked defendant if he had been drinking. Defendant replied that he had had "a cocktail or two."
Dr. Ochner was taken by medical personnel to Robert Wood Johnson Hospital where he was diagnosed with an overwhelming head injury and a broken neck. Because Dr. Ochner's heart had stopped beating, a trauma team opened his chest and massaged his heart. The team was unable to revive his heart so that it would beat on its own and was also unable to observe any evidence of brain function. Dr. Ochner was pronounced dead at about 5:00 a.m. The cause of death was a fatal hemorrhage of the lining of the brain and the brain itself. A CAT scan revealed that the injuries were consistent with being struck from behind by a car traveling at a high speed.
A test of defendant's blood alcohol level performed at about 3:00 a.m. showed the level to be 0.253 percent, from which Dr. Charles Tindall opined that defendant was severely impaired and under the influence of alcohol at the time of the accident. At such a level defendant's reaction time, peripheral vision, and night vision would have been impaired.
Defendant's sister, Nellie Harris, testified that defendant was home watching television on the night of April 3, 1992, and that he had nothing to drink. She admitted that he left the house in his Trans-Am between 12:15 and 12:30 a.m. on the following morning.
John Desch testified on behalf of defendant as an expert in accident reconstruction. Desch opined that defendant was traveling at about 45 miles per hour when he struck the victim's car. Both experts used the same formula to estimate the speed of the *6 Trans-Am at the point of impact. Desch guessed that the victim's car may have been airborne for about thirty feet. On rebuttal, the State's expert Pauli disagreed with this assertion, stating that if the car had been airborne for that distance it would have left a discernable mark on the road where it landed.
The defense theory was that the traffic light had turned green just before the accident and defendant was traveling only 5 miles per hour over the speed limit. The jury acquitted defendant of aggravated manslaughter, but convicted him of the lesser-included offense of reckless manslaughter, N.J.S.A. 2C:11-4b(1), and death by auto, N.J.S.A. 2C:11-5. Thereafter, the judge found defendant guilty of several motor vehicle offenses.
At sentencing the judge merged the death-by-auto conviction and the other motor vehicle convictions with the reckless manslaughter conviction under count one of the indictment. He sentenced defendant to the presumptive term of seven years for reckless manslaughter, and committed him to the custody of the Commissioner of the Department of Corrections. In addition, defendant's driver's license was revoked for a two-year period consecutive to the custodial term and defendant was assessed a $100 V.C.C.B. penalty.
On appeal, defendant argues:
ISSUE I THE JUDGE ERRED IN REFUSING TO DEFINE THE DISTINCTION BETWEEN RECKLESS MANSLAUGHTER AND DEATH BY AUTO.
ISSUE II THE COURT ABUSED ITS DISCRETION BY ALLOWING THE STATE TO REFER TO THE VICTIM AS A DOCTOR AND BY ALLOWING THE STATE TO INTRODUCE INFLAMMATORY AND IRRELEVANT EVIDENCE RELATING THERETO.
ISSUE III THE JUDGE ERRED IN CHARGING THE JURY REGARDING THE ISSUE OF INTOXICATION AT 0.10 PERCENT BLOOD ALCOHOL CONTENT AND THE PROSECUTION'S SUMMATION COMPOUNDED THAT ERROR.
ISSUE IV THE JUDGE IMPROPERLY RESTRICTED THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS.
ISSUE V THE DEFENDANTS SENTENCE WAS MANIFESTLY EXCESSIVE AND MUST BE REDUCED.

*7 I.
The defendant argues that the trial court judge erred in not adequately defining the difference between reckless manslaughter and death by auto. Defendant raised this issue in his motion for a judgment of acquittal and, in the alternative, in his motion for a new trial. Because the harmless error rule applies, a reversal is not required unless the appellate court finds that there was error "capable of producing an unjust result." R. 2:10-2. Any error is harmless unless there is reasonable doubt that the error contributed to the verdict. State v. Macon, 57 N.J. 325, 338, 273 A.2d 1 (1971); State v. Slobodian, 57 N.J. 18, 23, 268 A.2d 849 (1970).
Defendant contends that the jury did not understand that "separate acts of recklessness" must be proven in addition to reckless driving before a jury can convict a defendant of reckless manslaughter. Defendant apparently presumes that the jury relied on defendant's intoxication as a separate act of recklessness, but argues that intoxication by itself is not a separate act of recklessness to justify a manslaughter conviction.
Both sides agree that State v. Jiminez, 257 N.J. Super. 567, 608 A.2d 996 (App.Div. 1992), is controlling law. In Jiminez, the defendant was acquitted of aggravated manslaughter but was convicted of reckless manslaughter. Id. at 582, 608 A.2d 996. The defendant successfully argued that the matter should be reversed on the ground that the jury instructions were confusing and did not accurately set forth the law. Id. at 572, 583, 608 A.2d 996. After briefly tracing the history of the current death-by-auto statute, N.J.S.A. 2C:11-5, we noted our holding in State v. Milligan, 202 N.J. Super. 336, 495 A.2d 132 (App.Div. 1985), aff'd o.b., 104 N.J. 67, 514 A.2d 1316 (1986), that an individual could be charged with aggravated manslaughter and/or death by auto, but could not be charged with reckless manslaughter and death by auto under the former statute because the conduct prohibited by these latter two statutes was identical. Jiminez, supra, 257 N.J. Super. at 575-76, 608 A.2d 996.
*8 The Supreme Court affirmed Milligan substantially for the reasons set forth by the Appellate Division. Justice Clifford, however, wrote a forceful dissent. Milligan, supra, 104 N.J. at 68-80, 514 A.2d 1316. Justice Clifford opined that the death-by-auto statute evolved from "the fact that under the common law all recklessly-caused homicides were punishable as manslaughter," and consequently "grand juries were reluctant to indict and petit juries were loathe to convict some defendants despite the fact that they plainly had committed reckless vehicular homicide." Id. at 71-72, 514 A.2d 1316 (Clifford, J., dissenting). Thus, the Legislature amended the death-by-auto statute to provide for a lesser penalty for a vehicular homicide than that called for by a manslaughter conviction. Id. at 72, 514 A.2d 1316 (Clifford, J., dissenting).
Justice Clifford concluded that while death by auto is clearly a lesser-included offense of aggravated manslaughter when death is caused by a motor vehicle, death by auto was also intended by the Legislature to be a lesser-included offense of reckless manslaughter. Id. at 72, 76, 514 A.2d 1316 (Clifford, J., dissenting). The Justice concluded that "if there is proof of recklessness beyond that required to sustain a death-by-auto charge  that is, proof of acts of recklessness, in addition to defendant's reckless driving of his automobile, that caused the victim's death  then a manslaughter prosecution should be allowed." Id. at 75, 514 A.2d 1316 (Clifford, J., dissenting).
Turning back to State v. Jiminez, supra, we pointed out that after Milligan the Legislature amended the death-by-auto statute to add paragraph "d." Jiminez, supra, 257 N.J. Super. at 576, 608 A.2d 996. That subsection reads:
Nothing herein shall be deemed to preclude, if the evidence so warrants, an indictment and conviction for manslaughter under the provisions of N.J.S. 2C:11-4. If an indictment for manslaughter is brought in a case involving the operation of a motor vehicle,... death by auto ... shall be considered a lesser-included offense.
[N.J.S.A. 2C:11-5d.]
In that case, we framed the issue as whether the jury instructions properly explained the quantitatively greater recklessness *9 contemplated for manslaughter than that required for a death-by-auto conviction. Jiminez, supra, 257 N.J. Super. at 582, 608 A.2d 996. We found it "fair to read the legislative rejection of Milligan as an endorsement of the dissenting view expressed by Justice Clifford." Ibid. Thus, we held that the current death-by-auto statute, N.J.S.A. 2C:11-5, "requires the trial judge to craft a charge to a lay jury explaining the subtle and sophisticated distinctions between the concept of recklessness envisioned by the Legislature in death by auto as distinguished from the recklessness envisioned in the manslaughter statute." Id. at 583, 608 A.2d 996.
Our review of the original charge satisfies us that it followed the dictates of Jiminez. Therefore, there was no error.
During deliberations, the jury requested that the judge repeat the definition of recklessness as it applies to manslaughter and death by auto, and define what constitutes "separate acts."[1] Defendant argues that the judge erroneously refused to guide the jurors, and by essentially repeating the charge suggested in Jiminez, the judge "deprived the jury of any clear understanding of what separates death-by-auto from manslaughter." Defendant reasons that if intoxication by itself can constitute a separate act of recklessness, "then, functionally, death-by-auto is no longer an available verdict for drunk drivers" because a drunk driver who kills someone as a result of reckless driving is always guilty of manslaughter. Defendant proposes that the "resolution to this obvious dilemma is that, while intoxication may play a part in evaluating recklessness, it cannot, by itself, constitute the necessary separate act to justify a manslaughter conviction."
Justice Clifford's dissent in Milligan contradicts defendant's theory. Justice Clifford specifically addressed the issue of intoxication as a separate act of recklessness:
I suggest ... that under certain circumstances drinking would constitute an additional act of recklessness that would justify a manslaughter prosecution. The *10 circumstances surrounding the drinking would have to have extraordinary characteristics.
[Milligan, supra, 104 N.J. at 78 n. 2, 514 A.2d 1316 (Clifford, J., dissenting).]
In State v. LaBrutto, 114 N.J. 187, 204, 553 A.2d 335 (1989), the Supreme Court stated that a defendant's intoxication is a factor to be considered by a jury in determining whether a defendant is guilty of death by auto. In short, it is for the jury to decide whether a defendant's intoxication constitutes a separate reckless act to warrant a manslaughter conviction; sometimes it will be enough by itself and sometimes it will not.
The State presented evidence that defendant was intoxicated when his car struck the victim's car, he was speeding, and he ran a red light. This evidence is similar to the facts in State v. Scher, 278 N.J. Super. 249, 650 A.2d 1012 (App.Div. 1994), certif. denied, 140 N.J. 276, 658 A.2d 299 (1995), where we stated:
Consideration of these factors separately, which is defendant's thesis here, may be insufficient in itself to elevate death by auto to reckless manslaughter. However, when a combination of the factors exist, the test has been met. It is enough to say that the record fairly shrieks of defendant's guilt.
[Id. at 271, 650 A.2d 1012.]
The defendant disputes these allegations but admits that if the jury found in favor of the State regarding any combination of these events, charges on both manslaughter and death by auto were appropriate. Nonetheless, defendant insists that the jury needed more guidance as to what constitutes separate acts of recklessness.
Defendant relies in part on a letter dated December 6, 1993, sent by a juror to the trial judge wherein the juror expressed concern about whether defendant's intoxication could constitute a separate reckless act to justify a reckless manslaughter conviction. Defendant also stresses Justice Clifford's admonition that to use drinking as a separate act the "circumstances surrounding the drinking would have to be extraordinary." Defendant then concedes that, although intoxication may sometimes be a separate act, the jury was not told this.
*11 The judge clearly followed the charge suggested by this court in Jiminez and properly instructed the jury on the elements of aggravated manslaughter, reckless manslaughter, and death by auto, and also correctly and thoroughly defined "reckless." The judge thus properly left it to the jury to determine, based on the evidence and the charge, whether defendant committed separate reckless acts in addition to his reckless driving on the night in question. We find that the judge's response to the jury's request was proper because the determination of whether defendant was responsible for additional acts of reckless conduct to justify a manslaughter conviction was within the province of the jury. Any error in the charge or any failure to charge was harmless.

II.
Defendant argues that the trial court abused its discretion and he was deprived of a fair trial due to both the prejudicial impact of references to the victim as "Doctor" and the prejudicial and irrelevant testimony of Dr. Louis D'Amelio.
Dr. D'Amelio, who was qualified as an expert in trauma surgery, testified that Dr. Ochner had come to the hospital to help care for a young man who had been in an automobile accident. He testified further that when Dr. Ochner left the hospital he was an "awake, alert, healthy, and ... vibrant young man."
Generally, the character of the victim is irrelevant to the magnitude of the crime, but here, because of the circumstances and early morning hour of the accident, the jury was entitled to know from where the victim was coming. Moreover, even if Dr. D'Amelio's testimony had the potential to inflame the jury, there is no evidence that it did. Any error in admitting the testimony was harmless, and the trial court judge did not abuse his discretion in refusing to exclude the evidence pursuant to N.J.R.E. 403.
Defendant also complains that he was prejudiced by the prosecutor's references to the victim as a doctor. The prosecutor's brief opening remark referring to the fact that prior to the *12 accident Dr. Ochner was at the hospital in his capacity as a surgeon and then was taken back to the same hospital, where he died from his injuries a few hours later, was not capable of producing an unjust result. R. 2:10-2. Furthermore, had the jury been unfairly influenced by status of the victim, it probably would have convicted defendant of aggravated manslaughter, not the lesser-included offense of reckless manslaughter.
Defendant additionally relies on a portion of the prosecutor's closing remarks. These remarks were in part in response to remarks made by defendant's attorney admonishing the jury not to base a decision on sympathy for the victim and were not "so egregious that [they] deprived defendant of a fair trial," State v. Ramseur, 106 N.J. 123, 322, 524 A.2d 188 (1987).
Parties are not entitled to a perfect trial, but only to a fair trial. Brown v. United States, 411 U.S. 223, 231-32, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208, 215 (1973); Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476, 484 (1968) (quoting Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593, 604 (1953)); State v. Mallozzi, 246 N.J. Super. 509, 518, 588 A.2d 389 (App.Div.), certif. denied, 126 N.J. 331, 598 A.2d 889 (1991). Defendant received a fair trial.

III.
Defendant argues that the judge erroneously instructed the jurors that if they found defendant's blood alcohol level was 0.10 percent or higher they could presume recklessness.
We find that the judge never mentioned a presumption, but merely told the jurors that if they found this level of blood alcohol, it was one factor from which they could infer recklessness. This was proper.
Further, the judge did not improperly exclude testimony as to two portions of defendant's expert witness' report. Defendant was not entitled to present this information through an expert *13 since it was based upon facts not in evidence, erroneous conclusions and pure speculation.

IV.
Lastly, defendant argues that his sentence was manifestly excessive and it should have been for only five years.
A sentence should not be disturbed on appeal unless it represents an abuse of discretion by the trial court, State v. Gardner, 113 N.J. 510, 516, 551 A.2d 981 (1989), and shocks the judicial conscience, State v. Roth, 95 N.J. 334, 364, 471 A.2d 370 (1984).
The judge found two aggravating factors and no mitigating factors: the risk that defendant will commit another crime and the need to deter defendant and others, N.J.S.A. 2C:44-1a(3), (9). The judge noted that the second degree offense of reckless manslaughter carries with it a presumption of incarceration pursuant to N.J.S.A. 2C:44-1d. The judge stated that because defendant's record revealed only one prior conviction of an indictable offense, defendant could be sentenced at the lower range for a second degree offense. Because defendant had an extensive driving record and he was driving while on the revoked list when the fatal accident occurred, the judge imposed a sentence greater than the minimum, but not the maximum. The sentence does not shock the judicial conscience.
The conviction and sentence under review are affirmed.
NOTES
[1] The judge had previously defined the term "reckless."