RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2012-15T3

E.M.,

 Plaintiff-Respondent,

v.

F.M.,

 Defendant-Appellant.
______________________________________________

 Argued January 31, 2017 – Decided March 2, 2017

 Before Judges Yannotti and Fasciale.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Morris County,
 Docket No. FV-14-0505-89.

 Ali Y. Ozbek argued the cause for appellant
 (Rutgers Law Associates, attorneys; John M.
 Boehler, on the briefs).

 John M. Mills III, argued the cause for
 respondent (Mills & Mills, P.C., attorneys;
 Mr. Mills, on the brief).

PER CURIAM

 Defendant appeals from an order entered by the Family Part

on November 30, 2015, which denied without prejudice his motion
to dissolve a domestic violence final restraining order (FRO). For

the reasons that follow, we reverse and remand the matter to the

trial court for further proceedings.

 I.

 Plaintiff and defendant were married and they had three

children. On November 15, 1988, plaintiff filed a domestic violence

complaint in the trial court. The complaint was filed under the

Prevention of Domestic Violence Act (PDVA), which was enacted in

1981 and codified at N.J.S.A. 2C:25-1 to -16, but later repealed

and replaced by N.J.S.A. 2C:25-17 to -35. L. 1991, c. 261, § 20.

In her complaint, plaintiff alleged that on November 9, 1988,

defendant had been "physically and verbally abusive" to her.

Apparently, at that time, the parties were residing in New York

State.

 Plaintiff asserted that she obtained a restraining order from

a court in New York, but defendant violated the order and spent a

night in jail. Plaintiff then fled to her sister's home in New

Jersey with two of the children, who were minors at that time. She

alleged that defendant called her there and threatened to take the

children from her.

 A judge issued a temporary restraining order (TRO) dated

November 15, 1988. The TRO enjoined defendant from having any

contact with plaintiff or harassing plaintiff or her relatives.

 2 A-2012-15T3
The TRO granted plaintiff temporary custody of the two minor

children, and stated that the issue of defendant's visitation

rights would not be considered until the hearing on the FRO, which

was scheduled for November 23, 1988. On December 1, 1988, the

court entered an order stating that the hearing on the FRO was re-

scheduled for December 8, 1988, "with the consent of the

attorneys."

 It appears that the trial court considered plaintiff's

application for a FRO on December 8, 1988. The court entered an

order on that date, which prohibited defendant from having any

contact with plaintiff or harassing plaintiff or her relatives.

The December 8, 1988 order awarded plaintiff temporary custody of

the minor children, but granted defendant supervised visitation

in New Jersey.

 The order precluded the parties from removing the children

from New Jersey without the court's permission, and stated that

plaintiff would have custody of the children until the court makes

a decision on the custody issue. The order stated that it had been

served upon defendant's attorney.

 The trial court also entered orders on December 22, 1988,

February 9, 1989, March 3, 1989, and March 9, 1989, which amended

the FRO. Among other things, the orders addressed defendant's

visitation with the children. The orders of December 22, 1988, and

 3 A-2012-15T3
March 9, 1989, noted that they had been served upon defendant's

attorney.

 On April 13, 2015, defendant filed a motion in the trial

court to vacate the FRO. In support of his motion, defendant

submitted a certification in which he stated that on November 1,

1994, a New York court had dissolved his marriage to plaintiff.

Defendant asserted that he had attempted to obtain from the court

transcripts of all proceedings relating to the FRO that were held

in 1988 and 1989, but he was informed that the record of those

proceedings was no longer available.

 Defendant also stated that he had hired a private investigator

to locate his children, and the investigator gave him addresses

for all three children. He asserted that in March 2006, he went

to a residence in Budd Lake, believing it was his son's home, and

a woman answered the door. Defendant claimed he was not aware that

the woman with whom he was speaking was his former wife. He stated

that with the exception of that encounter, he did not have any

contact with plaintiff since 1989 and that he had never violated

the FRO.

 In addition, defendant asserted that he was then seventy

years old, and had many health problems, including congestive

heart failure, and diabetes, which has caused a partial paralysis

of the sciatic nerves in both legs. Defendant said he does not use

 4 A-2012-15T3
drugs or alcohol, and he has not been convicted of any crimes

since the FRO was entered.

 Defendant further claimed that when he and his current wife

return to the United States from traveling abroad, they are taken

into custody because of the FRO. He asserted that he is detained

for long periods of time and "treated like a criminal." Defendant

said he travels each year to Taiwan, and claimed that the treatment

he faces when returning to the United States makes him reluctant

to leave the country. On occasion, he also travels internationally

on work-related business.

 Plaintiff opposed defendant's application and submitted a

certification to the trial court. In her certification, plaintiff

stated that her entire marriage to defendant was "laced with

violence and threats directed to [her]." She claimed defendant

called her "brain dead" and a "stupid moron."

 Plaintiff said the incident that led to the issuance of the

FRO was a dispute over money that defendant allegedly spent on

prostitutes. She stated that defendant began to threaten her and

her son tried to protect her. According to plaintiff, defendant

"smashed" her son into the wall of their home, and when her son

ran upstairs, defendant screamed at him. Plaintiff said her son

"ended up running away and our two young daughters were completely

traumatized."

 5 A-2012-15T3
 Plaintiff stated that defendant directed many acts of

violence at her. She said defendant had thrown her against the

stove and attempted to strangle her. She claimed his conduct "has

been so evil" that none of the children want anything to do with

him.

 Plaintiff also stated that although the conduct that resulted

in the FRO occurred many years ago, she still required the FRO.

She said defendant had conducted himself in a "most awful and

hideous manner." According to plaintiff, defendant paid little or

no child support and defied the New York court's order on equitable

distribution. Plaintiff stated that generally, defendant did as

he pleased "and got away with it."

 Plaintiff noted that about five years before, defendant had

appeared at her home in Budd Lake. She was inside, attending to

household work, when she heard a loud pounding on the front door.

Plaintiff stated that she answered the door and was shocked to see

defendant. He identified himself and said he wanted to see his

son. Plaintiff asserted that she "was scared to death." She stated

that she was in shock and told defendant the person he was looking

for did not live there.

 Plaintiff said that, in view of the history of violence that

defendant had directed at her, "coupled with his relatively recent

and aggressive unannounced and uninvited appearance at [her]

 6 A-2012-15T3
home," she has "an objective fear" of defendant. She stated that

the court should continue the protection provided to her in the

FRO.

 One of plaintiff's daughters also submitted a certification

to the court. She stated that said defendant "verbally and

physically" abused plaintiff almost every day she was married to

defendant. She claimed that her first memory as a child was of

defendant strangling her mother. She said that after she fled with

her mother, defendant had "haunted" them.

 Plaintiff's daughter also asserted that even after her

parents divorced, defendant remained "a threat." She stated that

in the previous ten years, defendant hired private investigators

to find her and her siblings. She asserted that on more than one

occasion, defendant "would just show up at our residences or places

of employment." She said defendant is dangerous, unpredictable,

and remains a threat to her mother.

 II.

 On April 13, 2015, the Family Part judge heard oral argument

on defendant's motion. The motion judge was not the judge who

entered the original FRO. Plaintiff's attorney advised the motion

judge that plaintiff did not consent to dissolution of the FRO.

The judge entered an order denying the motion without prejudice.

 7 A-2012-15T3
 In a statement of reasons attached to the court's order, the

motion judge noted that N.J.S.A. 2C:25-29(d) allows the court to

dissolve or modify a FRO, "but only if the [j]udge who dissolves

or modifies the order is the same [j]udge who entered the order,

or has available a complete record of the hearing or hearing on

which the order was based." The motion judge also noted that in

Kanaszka v. Kunen, 313 N.J. Super. 600, 606-07 (App. Div. 1998),

we held that the term "complete record" in N.J.S.A. 2C:25-29(d)

includes, among other things, a complete transcript of the hearing

on the FRO.

 The judge observed that the court's file on the FRO contained

little documentation, and the FRO did not identify the predicate

act or acts upon which the order was based. The judge also observed

that defendant could not provide a complete transcript of the FRO

hearing because the county had purged the records related to the

FRO.

 The judge determined that without the ability to review the

transcript of the FRO hearing, the court was not authorized to

provide relief under N.J.S.A. 2C:25-29(d). The judge rejected

defendant's contention that he had substantially complied with the

statute. The judge also rejected defendant's contention that the

court should conduct a plenary hearing on the motion, in the

exercise of its equitable powers.

 8 A-2012-15T3
 On appeal, defendant argues that: (1) the court's application

of the "complete record" standard in N.J.S.A. 2C:25-29(d) violates

the prohibition on ex post facto legislation; (2) the trial court

failed to consider that the Legislature's intent was to provide

individuals the opportunity to be relieved of the restraints in a

FRO; (3) the court's ruling violated his due process rights; (4)

the court's decision should be reversed because he substantially

complied with the "complete record" requirement of N.J.S.A. 2C:25-

29(d); and (5) the procedural requirements in N.J.S.A. 2C:25-29(d)

should not have been applied because only the Supreme Court has

the authority to prescribe the procedures for the New Jersey

courts.

 III.

 As the motion judge noted, N.J.S.A. 2C:25-29(d) provides

that:

 Upon good cause shown, any final order may be
 dissolved or modified upon application to the
 Family Part of the Chancery Division of the
 Superior Court, but only if the judge who
 dissolves or modifies the order is the same
 judge who entered the order, or has available
 a complete record of the hearing or hearings
 on which the order was based.

In Kanaszka, we held that in determining whether a party has shown

good cause to dissolve or modify a FRO, the court must consider

the factors identified in Carfagno v. Carfagno, 288 N.J. Super.

 9 A-2012-15T3
424 (Ch. Div. 1995). Kanaszka, supra, 313 N.J. Super. at 607. The

Carfagno factors are:

 (1) whether the victim consented to lift the
 restraining order; (2) whether the victim
 fears the defendant; (3) the nature of the
 relationship between the parties today; (4)
 the number of times that the defendant has
 been convicted of contempt for violating the
 order; (5) whether the defendant has a
 continuing involvement with drug or alcohol
 abuse; (6) whether the defendant has been
 involved in other violent acts with other
 persons; (7) whether the defendant has engaged
 in counseling; (8) the age and health of the
 defendant; (9) whether the victim is acting
 in good faith when opposing the defendant's
 request; (10) whether another jurisdiction has
 entered a restraining order protecting the
 victim from the defendant; and (11) other
 factors deemed relevant by the court.

 [Carfagno, supra, 288 N.J. Super. at 434-35.]

 Here, the motion judge also noted that in Kanaszka, we held

the "complete record" requirement in N.J.S.A. 2C:25-29(d)

includes, at a minimum, "all pleadings and orders, the court file,

and a complete transcript of the [FRO] hearing." Kanaszka, supra,

313 N.J. Super. at 606.

 In Kanaszka, we stated that unless the motion judge has the

ability to review the transcript, the judge would not be able "to

properly evaluate" a motion to dissolve or modify the FRO. Ibid.

We held that the trial court may deny a motion to dissolve or

 10 A-2012-15T3
modify a FRO if the movant fails to provide the court with the

transcript of the FRO hearing. Id. at 607.

 We pointed out that in order to properly consider the Carfagno

factors, the judge who did not issue the initial FRO must

thoroughly review the parties' previous history of domestic

violence in order "to fully evaluate the reasonableness of the

victim's continued fear of the perpetrator." Ibid. (citations

omitted). The court also may consider any incidents of domestic

violence that were the subject of testimony at the final FRO

hearing. Ibid. We noted that such evidence could be significant

if the defendant had consented to the allegations in the domestic

violence complaint, or did not contest the application. Ibid.

 In this matter, plaintiff obtained a domestic violence FRO

in 1988, pursuant to the terms of the PDVA then in effect. The

PDVA then provided in pertinent part that the Family Part could

dissolve or modify a FRO upon a showing of good cause. N.J.S.A.

2C:25-14(h) (repealed by L. 1991, c. 261, § 20). See L. 1987, c.

356, § 5.

 Here, the judge applied the requirements of N.J.S.A. 2C:25-

29(d), because the provisions of the PDVA in effect when the FRO

was issued were thereafter repealed and replaced by the provisions

of the PDVA presently in effect. Consequently, N.J.S.A. 2C:25-

 11 A-2012-15T3
29(d) now provides the only statutory authority for dissolving or

modifying a domestic violence FRO.

 As we have noted, the motion judge denied defendant's motion

to dissolve the FRO because defendant had not provided the court

with the "complete record," including the full transcript of the

FRO hearing. In reaching this decision, the judge relied upon our

decision in Kanaszka. However, Kanaszka does not address the

situation presented in this case.

 In Kanaszka, the transcript of the FRO hearing was available,

while in this case, defendant is not able to provide the transcript

because the county had discarded the record of the FRO proceedings.

It is unclear whether defendant contested the order when it was

entered. Furthermore, it is not clear whether defendant appeared

at the hearing on the FRO, although the record indicates that he

was represented in that proceeding by an attorney. It also is

unclear whether the court heard any testimony before entering the

FRO.

 We conclude that under these circumstances, the motion judge

should not have denied defendant's motion because he failed to

provide the court with the transcript of the FRO hearing. If no

testimony was taken when the court entered the FRO, or if plaintiff

cannot recall the testimony she provided, the judge should then

 12 A-2012-15T3
consider the motion based on the "complete record" that presently

exists.

 If, however, plaintiff provides a certification stating that

testimony was, in fact, taken in support of her application for a

FRO, and she recalls her testimony, the judge should endeavor to

reconstruct the record, using a process similar to that described

in Rule 2:5-3. The rule applies to appeals where "a verbatim record

made of the proceedings has been lost, destroyed or is otherwise

unavailable[.]" Ibid.

 We emphasize that the purpose of any reconstruction of the

record would be to determine the testimony that plaintiff presented

in that proceeding. Reconstruction of the record is not an

opportunity for defendant to litigate the issuance of the FRO,

particularly if he did not contest the entry of that order or

testify at that proceeding.

 We also emphasize that the burden of showing good cause to

dissolve the FRO remains with defendant. It is his burden to

establish that, upon consideration of the Carfagno factors, the

FRO should be dissolved. If the record that presently exists does

not provide a basis for vacating the FRO, the motion must be

denied.

 13 A-2012-15T3
 We therefore reverse the order denying defendant's motion,

and remand the matter to the trial court for further proceedings

on the motion.

 IV.

 Defendant also argues that the application of the "complete

record" standard in N.J.S.A. 2C:25-29(d), with the requirement

that he submit a complete transcript of the final FRO hearing,

violates the prohibition on ex post facto legislation. The

contention is without sufficient merit to warrant extended

comment. R. 2:11-3(e)(1)(E). However, we add the following brief

comments.

 As we stated previously, the PDVA in effect when the FRO was

entered authorized the trial court to dissolve or modify a FRO,

but it did not specifically require the movant to provide the

court with a "complete record" of the FRO proceedings if the judge

hearing the motion was not the judge who entered the initial order.

Nevertheless, a court could have required the movant to provide a

full record, so that it could properly assess whether the FRO

should be dissolved or modified.

 As noted, N.J.S.A. 2C:25-29(d) was part of the changes to the

PDVA which were enacted in 1991, and the statute added the

provision that, in certain circumstances, the movant must provide

the court with a "complete record" on a motion to dissolve or

 14 A-2012-15T3
modify a FRO. This was not, however, a substantive change in the

requirements for obtaining dissolution or modification of a FRO.

The PDVA as amended in 1991 only made specific what was implicit

in the PDVA before the 1991 amendments. As we stated previously,

the court had the authority to compel the movant to provide the

full record of the FRO proceedings. Indeed, it may fairly be said

that the court was always required to make its decision on a

"complete record."

 Furthermore, a domestic violence FRO is essentially civil in

nature. J.D. v. M.D.F., 207 N.J. 458, 474 (2011) (citing Crespo

v. Crespo, 408 N.J. Super. 25, 32-34 (App. Div. 2009), aff'd o.b.,

201 N.J. 207 (2010)). More important, the "complete record"

requirement in N.J.S.A. 2C:25-29(d) is not punitive in purpose of

effect, when applied to a FRO issued before that statute was

enacted. See Riley v. N.J. State Parole Bd., 219 N.J. 270, 285-86

(2014) (noting that the constitutional bar against ex post facto

punishments may be applied to a civil measure if the purpose or

effect of the measure is punitive in nature) (citation omitted)).

 We therefore conclude that the application of the "complete

record" requirement in N.J.S.A. 2C:25-29(d) to a FRO entered

pursuant to the PDVA before the statute was enacted is not a

violation of the constitutional proscription on ex post facto

legislation.

 15 A-2012-15T3
 Defendant further argues that the "complete record"

requirement in N.J.S.A. 2C:25-29(d) is a matter of procedure that

impermissibly infringes upon the Supreme Court's plenary authority

under the New Jersey Constitution to make rules governing practice

and procedure in the State's courts. N.J. Const., Art. VI, § II,

¶ 3; Winberry v. Salisbury, 5 N.J. 240, 247 (1950), cert. denied,

340 U.S. 877, 71 S. Ct. 123, 95 L. Ed. 838 (1950). We disagree.

 The requirement that a movant submit a "complete record" on

a motion to dissolve or modify a FRO is a matter of substance, not

procedure. As we explained in Kanaszka, when the judge hearing a

motion to dissolve or modify a FRO is not the judge who entered

the initial order, the "complete record" is required of the

proceedings that led to the issuance of the FRO so that the court

can properly evaluate the merits of the application. Kanaszka,

supra, 313 N.J. Super. at 606.

 In view of our decision, we need not consider defendant's

other arguments: that the trial court erred by failing to consider

the Legislature's intent in providing parties an opportunity to

seek relief from a FRO; that he substantially complied with the

statute; and that denial of his motion on procedural grounds

deprived him of due process.

 16 A-2012-15T3
 Reversed and remanded to the trial court for further

proceedings in conformity with this opinion. We do not retain

jurisdiction.

 17 A-2012-15T3