**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5069-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

RASHAN WASHINGTON,
a/k/a DAVID HOLDER,
RASHON WASHINGTON,
and RASHAN WILLIAMS,

      Defendant-Appellant.

_____

Argued October 21, 2020 – Decided November 25, 2020

Before Judges Accurso, Vernoia, and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 15-08-1833.

Kelley M. Brogan, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kelley M. Brogan, on the brief).

Steven Cuttonaro, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Steven Cuttonaro, of counsel and on the brief).

PER CURIAM

Defendant Rashan Washington appeals from an October 20, 2017 judgment of conviction finding him guilty of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a), claiming the jury verdict was the product of an unfair trial. He also argues his sentence is excessive. We affirm.

The facts are straightforward. On April 3, 2014, at around 3:10 p.m., Shaquan Grant and Bernardo Coleman were walking out of the Garden Spires Housing Complex in Newark, where Grant and his family lived. As the men left the complex, defendant and two others exited a black Chevy Trailblazer and opened fire on Coleman and Grant. A bullet grazed Coleman's forehead, but Grant was unharmed. Grant returned fire, while defendant and his accomplices took cover nearby. A school bus and parked cars were caught in the crossfire. Grant retreated, and defendant and his cohorts drove off in the Trailblazer.

Surveillance video captured three individuals running toward the Garden Spires Housing Complex, and showed the driver exiting the car wearing a black hooded sweatshirt and sporting dreadlocks. When the police interviewed Coleman about the shooting, he could not identify his assailants, but stated the attackers fled in a Trailblazer. He identified a photograph of the vehicle.

On April 4, 2014, Grant was arrested based on his involvement in the shooting. He agreed to give a statement to the police, using the pseudonym, "Juan Hernandez." Grant told the police one of the shooters was "[s]hort, kind of brown-skinned, [with] dreads" and nicknamed "Shooter G" or "Shooter." He identified defendant as "Shooter" when the police showed him a photo of defendant.

The police arrested defendant on April 5, 2014, and searched a black Chevy Trailblazer parked across the street from his home. During the search, they found defendant's wallet, a notebook, his bank statement, and a computer hard drive.

At trial, defendant chose not to testify. When the State produced Grant and Coleman to testify, both claimed they could not remember certain details of the shooting. Accordingly, over defendant's objection, the trial judge permitted the State to reference the police statements of these witnesses. The State also produced a ballistics expert, who testified that nine of at least twenty-three shots fired were from one gun, and the remainder were fired from another. The jury found defendant guilty of the weapons offenses but could not reach a unanimous verdict on the more serious charges, including two counts of first-degree

A-5069-17T4

attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3(a), and one count of first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and 2C:11-3(a)(1).

At sentencing, the judge granted the State's motion for an extended term and imposed a sentence of fourteen years with a seven-year parole disqualifier on the possession of a weapon for an unlawful purpose charge. Additionally, the judge imposed a concurrent seven-year term with a forty-two-month parole disqualifier on the remaining charge. All other charges were dismissed.

On appeal, defendant raises the following arguments:

POINT I

> THE PROSECUTOR'S IMPROPER COMMENTS AND MISCHARACTERIZATION OF THE EVIDENCE DURING SUMMATION PREJUDICED DEFENDANT AND REQUIRE A NEW TRIAL. (Partially Raised Below).

POINT II

> IN LIGHT OF THE GRAVE DANGER OF WRONGFUL CONVICTION POSED BY INHERENTLY UNRELIABLE JAILHOUSE SNITCH TESTIMONY, ITS INTRODUCTION AT TRIAL IS INCOMPATIBLE WITH THE DUE PROCESS RIGHTS GUARANTEED UNDER THE NEW JERSEY CONSTITUTION AND, THUS, THE STATE'S HEAVY RELIANCE ON SUCH TESTIMONY IN THIS CASE REQUIRES REVERSAL OF [DEFENDANT'S] CONVICTIONS. IN THE ALTERNATIVE, REVERSAL IS REQUIRED BECAUSE THE COURT FAILED TO HOLD A

PRETRIAL HEARING ON THE RELIABILITY OF THE JAILHOUSE SNITCH TESTIMONY AND FAILED TO PROPERLY INSTRUCT THE JURY ON HOW TO EVALUATE SUCH TESTIMONY. (Not Raised Below).

POINT III

THE CUMULATIVE EFFECT OF THE ERRORS AT DEFENDANT'S TRIAL DEPRIVED [DEFENDANT] OF THE RIGHT OF DUE PROCESS OF LAW AND A FAIR TRIAL. (Not Raised Below).

POINT IV

THE SENTENCE IMPOSED WAS EXCESSIVE, UNDULY PUNITIVE, AND THEREFORE MUST BE REDUCED. (Not Raised Below).

Regarding Point I, defendant contends the State relied on "inflammatory and misleading statements in its summation" that "angered and misled the jury," and "deprived him of a fair trial." We need not address each of defendant's complaints about the prosecutor's closing remarks. Instead, we highlight a few to explain why we are satisfied the prosecutor's summation provides no basis for appellate relief.

Defendant claims the prosecutor materially deviated from the evidence presented at trial. He also contends she misled the jury into believing Grant, Coleman, and defendant knew each other well. Moreover, he argues the prosecutor improperly impassioned the jury by repeatedly painting Grant as a

hero and referencing Grant's family. Defendant points to the prosecutor's comment that defendant "brought the war to Garden Spires. He brought the war to Grant, where Grant lives with his family," and "if Shaquan Grant didn't have that gun, lives would have been lost." Additionally, defendant argues the prosecutor improperly told the jury that the reason Coleman could not remember the details of the shooting during trial was because of "fear."

Initially, we note that the trial judge interrupted the State's summation on two occasions, expressing concern that the prosecutor was making statements that were not connected to evidence in the case. The judge cautioned her to "be careful about testifying to . . . things that are not in the record." After the judge first interrupted her summation, the prosecutor promptly informed the jury she was referencing "what the State believes are strong inferences from all the facts that you receive. It's up to you to make that final determination. You are the final arbiter of the facts and the strong inferences that you can make when it comes to what happened that day." Subsequently, the judge interrupted the prosecutor and issued a curative instruction after the prosecutor stated that detectives have "no problem" with a victim, like Grant, using an alias when speaking to the police. The judge's curative instruction included the statement that "if you hear either of the attorneys say something that you believe was not

6

in the case or was never testified to in the case, then you have the right to disregard it."  Similarly, when he charged the jury, he reminded jurors that "summations of counsel are not evidence."

"A prosecutor must 'conscientiously and ethically undertak[e] the difficult task of maintaining the precarious balance between promoting justice and achieving a conviction,' ensuring that at all times his or her 'remarks and actions [are] consistent with his or her duty to ensure that justice is achieved.'"  State v. Jackson, 211 N.J. 394, 408 (2012) (alterations in original) (quoting State v. Williams, 113 N.J. 393, 447-48 (1988)).  "Notwithstanding the high standard to which a prosecutor is held as he or she gives an opening statement or summation, 'not every deviation from the legal prescriptions governing prosecutorial conduct' requires reversal."  Id. at 408-09 (quoting Williams, 113 N.J. at 452).

"[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive defendant of a fair trial."  State v. Wakefield, 190 N.J. 397, 437 (2007) (quoting State v. Papasavvas (I), 163 N.J. 565, 625 (2000)).  Indeed, even if improper arguments were made at closing, if those remarks do not produce an unjust result, they are harmless. State v. McGuire, 419 N.J. Super. 88, 145 (App. Div. 2011).  It is well-settled that remarks do not constitute reversible error when an objection is made and

the jury is directed to disregard offending remarks. State v. R.B., 183 N.J. 308, 333-34 (2005); State v. Murphy, 412 N.J. Super. 553, 560 (App. Div. 2010).

"Thus, '[t]o justify reversal, the prosecutor's conduct must have been "clearly and unmistakably improper," and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense.'" Wakefield, 190 N.J. at 438 (alteration in original) (quoting Papasavvas, 163 N.J. at 625). In making this determination, we

> consider several factors, including whether "timely and proper objections" were raised, whether the offending remarks "were withdrawn promptly," and whether the trial court struck the remarks and provided appropriate instructions to the jury. Additionally, [we] will consider whether the offending remarks were prompted by comments in the summation of defense counsel. If, after completing such a review, it is apparent . . . that the remarks were sufficiently egregious, a new trial is appropriate, even in the face of overwhelming evidence that a defendant may, in fact, be guilty. In contrast, if the prosecutorial remarks were not "so egregious that [they] deprived the defendant of a fair trial[,]" reversal is inappropriate.
>
> [State v. Smith, 212 N.J. 365, 403-04 (2012) (alterations in original) (citations omitted) (quoting State v. Frost, 158 N.J. 76, 83 (1999)).]

"[P]rosecutors are afforded considerable leeway in their closing arguments" and are "expected to make vigorous and forceful closing arguments . . . ." State v. Smith, 167 N.J. 158, 177 (2001). Still, prosecutors "should not

8

make inaccurate legal or factual assertions during a trial and . . . must confine their comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence." Wakefield, 190 N.J. at 437 (quoting State v. Reddish, 181 N.J. 553, 641 (2004)). A prosecutor "is entitled to be forceful and graphic in his [or her] summation to the jury, so long as [the prosecutor is] confine[d] . . . to fair comments on the evidence presented." State v. DiPaglia, 64 N.J. 288, 305 (1974) (citing State v. Johnson, 31 N.J. 489, 510-11 (1960)).

Guided by these principles, we are satisfied that the prosecutor's comments, while at times problematic, did not substantially prejudice defendant's fundamental right to have a jury fairly evaluate the merits of his defense. In fact, it appears the jury followed the judge's instructions, as defendant was not convicted of the more serious charges involving attempted murder or conspiracy to commit murder. See State v. Lane, 288 N.J. Super. 1, 11-12 (App. Div. 1995) (noting that had jurors been unfairly influenced by the prosecutor's comments, they would likely have convicted him of the greater offense instead of the lesser included). Also, the judge forcefully instructed the jurors twice during the State's summation and again in his charge that remarks by counsel made in summation were not to be considered as evidence, the jury should determine the case based solely on its recollection of the evidence, the

State had the burden of proof and defendant was entitled to a presumption of innocence. See State v. Smith, 212 N.J. 365, 409 (2012) (holding a prosecutor's improper remarks made during summation can be cured so long as the trial court "clearly instruct[s] the jury that the remarks made . . . were not evidence, but argument"); see also State v. Loftin, 146 N.J. 295, 390 (1996) (citing State v. Manley, 54 N.J. 259, 271 (1969)) (accepting the presumption that juries follow a court's instructions). Accordingly, we are not convinced the prosecutorial conduct of which defendant complains "was so egregious" as to deprive him of a fair trial." Wakefield, 190 N.J. at 437 (quoting Papasavvas, 163 N.J. at 625).

We are satisfied Point II lacks merit and warrants no discussion in a written opinion. R. 2:11-3(e)(2). Also, given our assessment of Point I, we need not address Point III at length. "A defendant is entitled to a fair trial, not a perfect one." Wakefield, 190 N.J. at 537 (quoting Lutwak v. United States, 344 U.S. 604, 619 (1952)). "[D]evised and administered by imperfect humans, no trial can ever be entirely free of even the smallest defect. [The court's] goal, nonetheless, must always be fairness." State v. Weaver, 219 N.J. 131, 155 (2014). However, the cumulative error doctrine requires that a court grant a new trial before a new and impartial jury in two instances. State v. Orecchio, 16 N.J. 125, 129 (1954). First, when legal errors are of such a magnitude that the

10

defendant has been prejudiced. Ibid. Second, when legal errors have, in the aggregate, caused the trial to be unfair. Ibid.; see State v. Koskovich, 168 N.J. 448, 540 (2001) (explaining that aggregate effect of errors may cause unfair trial). When a defendant claims that the cumulative effect of trial errors prejudiced him or her, an appellate court must evaluate whether the defendant received a fair trial and must consider the impact of the errors on the defendant's ability to present a defense. Wakefield, 190 N.J. at 538.

As discussed in Point I, the prosecutor's remarks in summation did not unfairly prejudice defendant. Moreover, as Point II lacks merit, we are persuaded defendant is not entitled to appellate relief on the basis of cumulative error.

Regarding Point IV, defendant contends that his aggregate sentence was "unduly punitive." He charges the sentencing judge abused his discretion by improperly weighing the aggravating and mitigating sentencing factors. Again, we disagree.

Here, the sentencing judge found, and weighed heavily, aggravating factors three (the risk that the defendant will commit another offense), six, (the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted), and nine, (the need to deter the defendant and

11

others from violating the law). N.J.S.A. 2C:44-1(a)(3), (6), (9). The judge found no mitigating factors and was "clearly convinced that the aggravating factors substantially predominate."

Defendant does not contest the aggravating factors found by the trial court were properly supported by competent evidence in the record. Instead, he argues the sentencing judge erred in failing to find mitigating factors.

We are mindful defendant did not request or argue for mitigating factors at sentencing. Moreover, the record reflects the judge evaluated potential mitigating factors, without necessarily identifying them, and found "[t]here were no mitigating factors argued or suggested and . . . none are applicable here." The judge's rationale for his sentencing decision can be deduced from the record, whereby he noted:

> Defendant's past and present conduct indicates that nothing short of an extended sentence would prevent him from further criminal conduct. His adult felony activity goes back 12 years to when he turned 18. Furthermore, prior to that, he had no less than six contacts with the juvenile justice system, whereby he received the benefit of probation. As an adult, defendant has been given a benefit of probation, but violated the same by committing crimes. He has also been sentenced to four years in state prison . . . . [I]t is likely that the defendant will commit another offense.
>
>         . . . .

His prior criminal record is extensive. It is continuous and it is escalating, in terms of violence.

. . . .

This defendant in particular needs to understand that this continued pattern of crime, which has now escalated in terms [of] violence, will not be tolerated.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018). We "must affirm the sentence of a trial court unless:

> (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not "based upon competent credible evidence in the record"; or (3) "'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'"
>
> [State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

This court is "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citing State v. Jarbath, 114 N.J. 394, 400-01 (1989)). "[M]itigating factors that are suggested in the record, or are called to the court's attention, ordinarily should be considered and either embraced or rejected on the record." State v.

13

Blackmon, 202 N.J. 283, 297 (2010). A trial court need not "explicitly reject each and every mitigating factor argued by a defendant." State v. Bieniek, 200 N.J. 601, 609 (2010). Where the aggravating factors predominate, the sentence imposed will lean "toward the higher end of the range," giving appropriate weight to all the factors. State v. Case, 220 N.J. 49, 64-65 (2014) (citations omitted).

Here, we discern no abuse of discretion in the trial court's identification and weighing of the applicable aggravating factors. Further, the record fully supports the trial court's finding regarding the lack of mitigating factors. As the judge adhered to the sentencing guidelines and defendant's sentence does not shock the judicial conscience, we perceive no basis to disturb defendant's sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14