257 N.J. Super. 567 (1992)
608 A.2d 996
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALBERTO JIMINEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 17, 1992.
Decided July 2, 1992.
*569 Before Judges MICHELS, O'BRIEN and HAVEY.
James F. Carney, attorney for appellant (Jeffrey Zajac, of counsel and on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Linda K. Danielson, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Defendant appeals from his conviction of third degree theft by receiving stolen property (N.J.S.A. 2C:20-7) and two counts of second degree reckless manslaughter (N.J.S.A. 2C:11-4b(1)). He was sentenced on the theft charge to a term of five years. On the manslaughter convictions he was sentenced to concurrent terms of ten years, but to be served consecutively to the sentence imposed for the theft. An appropriate penalty payable to the Violent Crimes Compensation Board was also imposed. We affirm the theft conviction, but reverse the manslaughter convictions and remand for a new trial.
Carmen Sanchez was the owner of a brown 1975 Pontiac to which she had lost the keys and, unable to afford a locksmith, had broken the ignition so only a pin was required to start the engine. When Sanchez was incarcerated she gave exclusive permission to use the car to her boyfriend, Anibal Figueroa. Figueroa never gave anyone else permission to use the car. *570 Late on December 2, 1989, Figueroa was arrested on Bloomfield Avenue in Newark, in the presence of defendant and 17-year-old Alexander Nozario. The brown Pontiac was parked around the corner from the place where Figueroa was arrested. Figueroa was not released from custody for five days.
At approximately 2:00 a.m. on December 4, 1989, two Belleville police officers began following the brown 1975 Pontiac, which the jury found defendant was driving with Nozario as his passenger. They chased it for approximately one mile. During the chase, the brown Pontiac proceeded east on Verona Avenue followed by the police car, with lights flashing and sirens wailing. Michael Rosario was driving a white Pontiac north on Mt. Prospect Avenue approaching its intersection with Verona Avenue; Rosario proceeded into the intersection with the green light in his favor. At the same time, the speeding brown Pontiac driven by defendant at between 45 and 80 miles an hour, with the police car chasing it, proceeded through the red light and collided into the driver's side of Rosario's car. Both vehicles flew into the air on impact and spun counterclockwise. The brown Pontiac hit a tree and both occupants were ejected from it. The white Pontiac crashed into a building and a utility pole. There were no skid marks at the scene. Rosario and Nozario were both killed in the collision. Defendant suffered substantial injuries. Toxicology reports on Nozario indicated Valium, codeine and morphine in his bloodstream. There were no such reports regarding defendant.
On August 16, 1990, defendant was indicted for third degree theft by receiving a stolen automobile and two counts of aggravated manslaughter pursuant to N.J.S.A. 2C:11-4a. Although defendant did not testify, his defense was that he was not the driver of the brown 1975 Pontiac. An autopsy had been performed on the body of Nozario by Dr. Fhito Pierre-Louis, who later testified that Nozario's injuries were mostly to the right side of his body, indicating he had been the right-seat passenger. The injuries were not compatible with his having been either the driver or left rear-seat passenger. Dr. Michael *571 Dunne, who had performed the autopsy on Rosario, was qualified as an expert in medicine, forensic pathology, and the analysis of the nature and cause of injuries. From his analysis of the nature and cause of the injuries suffered by Nozario and defendant, he found it "most probable" that at the time of the collision defendant was driving the automobile and Nozario was the right-front passenger. The State also produced the testimony of John T. Barry, a Nutley Township police officer, who qualified as an expert in accident reconstruction and traffic safety. He expressed the view that both occupants of the brown Pontiac were still in the vehicle when it hit the tree and they were both thrown violently through the space where the popped windshield had been. Finally, because of a suggestion in cross-examination as to the absence of fingerprints, the State produced a detective who testified as an expert that it is almost impossible to obtain fingerprints from a steering wheel.
The defense called two witnesses. A female friend of defendant testified that at approximately 1:00 a.m. on the morning of December 4, defendant had stopped at her house and tried to convince her to go out with him. When she refused and defendant left, she saw him get into the passenger side of the car, which she recognized as belonging to Carmen Sanchez or Anibal Figueroa. A consulting engineer, who qualified as an expert in biomechanical engineering and accident reconstruction, testified that in his opinion the injuries suffered by defendant and Nozario were not consistent with their having still been in the car when it struck the tree. In his opinion, defendant was the passenger and flew out the passenger side when the brown car crashed into the Rosario automobile, suffering his head injuries when he hit the ground. He concluded that Nozario, as the driver, also flew out the passenger-side door.
At the end of the State's case, defendant moved for a judgment of acquittal on the theft charge, contending that no evidence had been produced to show defendant knew the car was stolen. The judge denied defendant's motion. The judge *572 charged the jury on aggravated manslaughter and, as lesser included offenses, reckless manslaughter (N.J.S.A. 2C:11-4b(1)) and death by auto (N.J.S.A. 2C:11-5).
Defendant was acquitted of the two counts of aggravated manslaughter, but found guilty of two counts of reckless manslaughter as well as theft by receiving the stolen automobile. He was sentenced as noted above and now appeals asserting the following legal arguments:
POINT I:
THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DEPRIVED THE DEFENDANT OF A FAIR TRIAL BY PERMITTING DUNNE, FIORENZA AND BARRY TO TESTIFY AS EXPERT WITNESSES DESPITE THE PROSECUTOR'S BREACH OF THE PRETRIAL DISCOVERY ORDER AND BREACH OF HIS DUTY TO DISCLOSE PURSUANT TO R. 3:13-3(a)(11).

POINT II: (Not Raised Below)
THE CONVICTIONS OBTAINED BELOW SHOULD BE VACATED AND THE DEFENDANT SHOULD BE GRANTED A NEW TRIAL BECAUSE THE TRIAL COURTS INSTRUCTION TO THE JURY ON THE CHARGES OF RECKLESS MANSLAUGHTER AND DEATH BY AUTO WERE UNDULY CONFUSING AND DID NOT ACCURATELY REFLECT THE STATE OF THE LAW WITH RESPECT TO THESE STATUTES.

POINT III: (Not Raised Below)
THE RECKLESS MANSLAUGHTER AND DEATH BY AUTO STATUTES OF THIS STATE VIOLATED THE DEFENDANT'S RIGHTS OF DUE PROCESS AND EQUAL PROTECTION UNDER THE FEDERAL AND STATE CONSTITUTIONS BECAUSE THEY WERE IMPERMISSIBLY VAGUE AND INCAPABLE OF BEING APPLIED IN A CONSISTENT OR LOGICAL MANNER WITH RESPECT TO SIMILARLY SITUATED PERSONS.
POINT IV:
THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S MOTION FOR ACQUITTAL WITH RESPECT TO THE CHARGE OF RECEIVING STOLEN PROPERTY.
POINT V:
THE MAXIMUM SENTENCE IMPOSED UPON THE DEFENDANT ON ALL THREE CONVICTIONS WAS MANIFESTLY EXCESSIVE BECAUSE THE COURT IMPROPERLY COUNTED AN AGGRAVATING FACTOR AND FAILED TO ACCOUNT FOR A MITIGATING FACTOR IN ITS REASONS IN SUPPORT OF THE DEFENDANT'S SENTENCE.
POINT VI:
THE DEFENDANT IS ENTITLED TO A RE-SENTENCING BECAUSE THE COURT BELOW FAILED TO PROPERLY WEIGH AND EXPLICITLY DETAIL ITS REASONS FOR THE SENTENCE IMPOSED.

*573 I
We first address defendant's Point IV concerning the denial of his motion for acquittal on the charge of receiving stolen property. In considering such a motion, the court is required to determine whether
viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt. [State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967)]
Accord, State v. Martinez, 97 N.J. 567, 571-72, 483 A.2d 117 (1984); State v. Brown, 80 N.J. 587, 591, 404 A.2d 1111 (1979). Our review of the trial court's denial of the motion for a judgment of acquittal requires utilization of the same standard. State v. Moffa, 42 N.J. 258, 263, 200 A.2d 108 (1964); State v. Foreshaw, 245 N.J. Super. 166, 185, 584 A.2d 832 (App.Div.), certif. denied, 126 N.J. 327, 598 A.2d 886 (1991). From our review of the evidence on the charge, the motion was properly denied. The State established that the vehicle was owned by Carmen Sanchez, who had given exclusive permission to her boyfriend, Anibal Figueroa, to use the vehicle while she was in jail. Figueroa clearly testified he never gave anyone permission to use the car. Yet, slightly more than 24 hours after defendant witnessed Figueroa's arrest on the street, with the car parked around the corner, defendant was operating that car and trying to avoid apprehension by the police. Sanchez and Figueroa were acquainted with defendant, and defendant and his female friend knew the vehicle was owned by Sanchez.
We agree with defendant that the State failed to establish why the police were chasing the vehicle that defendant was driving by failing, for some unexplained reason, to call either of the two Belleville police officers as witnesses. As defendant argues, the chase could have been initiated for a myriad of reasons. Nonetheless, the jury could infer from defendant's operation of the vehicle which he did not own, and which he did not have permission to operate, that he was seeking to elude *574 the police because of his knowledge that the vehicle was stolen. The motion for a judgment of acquittal was properly denied and the conviction for the offense of theft by receiving movable property of another, knowing that it had been stolen or believing that it was probably stolen, is affirmed.
On this appeal, defendant contends that the State's proof only established the offense of joyriding (N.J.S.A. 2C:20-10). Yet, defendant did not request a charge on that offense as an included offense nor object to the omission of such a charge. Apparently, defense counsel did not view the evidence presented as only establishing that offense, as is now argued.
Defendant was sentenced to the maximum term of five years for this third degree offense. Although he contends the three sentences imposed are manifestly excessive, we only address the sentence imposed for the theft offense. The trial judge found as aggravating circumstances defendant's prior record, noting that he was on parole when this offense occurred. Although the judge did not expressly say the aggravating circumstances outweighed the mitigating circumstances, imposing the maximum sentence for this offense, although without any period of parole ineligibility, implies that conclusion. We have carefully reviewed the sentencing proceedings in accordance with the criteria announced by the Supreme Court in State v. Roth, 95 N.J. 334, 471 A.2d 370 (1984), and State v. Hodge, 95 N.J. 369, 471 A.2d 389 (1984), and conclude that the judge followed the correct sentencing guidelines which he applied based upon findings of fact supported by the evidence. Furthermore, he did not clearly err in weighing the relevant factors in reaching his conclusion. We find no error in the sentence.

II
We turn to defendant's remaining legal arguments. Because we find merit to defendant's Point II, upon the basis of which the reckless manslaughter convictions will be reversed *575 and remanded for a new trial, we do not address his other points. We recognize that the critical question for resolution by the jury was whether defendant was driving the brown Pontiac. Defendant claims the expert testimony admitted on behalf of the State violated the discovery order. However, since the case must be retried, defendant will have ample opportunity to prepare his defense to that testimony.
This case again presents the question of the appropriate offense or offenses to be charged when a criminal homicide results from the operation of a motor vehicle, which has been addressed by us in several opinions. Here, the indictment charged defendant with first degree aggravated manslaughter pursuant to N.J.S.A. 2C:11-4a. We thoroughly addressed the evolution of that offense as a part of criminal homicide in the New Jersey Code of Criminal Justice (Code), in State v. Pindale, 249 N.J. Super. 266, 592 A.2d 300 (App.Div. 1991).
The trial judge also charged the jury on second degree reckless manslaughter pursuant to N.J.S.A. 2C:11-4b(1) and third degree death by auto (N.J.S.A. 2C:11-5) as lesser included offenses. As noted, defendant was acquitted of aggravated manslaughter, but convicted of reckless manslaughter. He contends the judge's charge to the jury on the lesser included offenses of reckless manslaughter and death by auto "were unduly confusing and did not accurately reflect the state of the law with respect to these statutes." We agree.
Before the amendment to N.J.S.A. 2C:11-5 (death by auto), by the Laws 1988, c. 75, § 1, we concluded in State v. Milligan, 202 N.J. Super. 336, 495 A.2d 132 (App.Div. 1985), aff'd 104 N.J. 67, 514 A.2d 1316 (1986), in a comprehensive opinion that where a death arose from reckless driving, a person could only be charged with aggravated manslaughter and/or death by auto, but not with reckless manslaughter and death by auto. We found that the standard of conduct proscribed in both the death-by-auto statute (N.J.S.A. 2C:11-5), and the reckless manslaughter statute (N.J.S.A. 2C:11-4b(1)), was identical, that is, "recklessly." *576 As we stated, the true difference in culpability lies in the distinction between recklessness, as used in the manslaughter and death-by-auto statutes, on the one hand, and recklessness "under circumstances manifesting extreme indifference to human life as set forth in N.J.S.A. 2C:11-4(a) covering aggravated manslaughter." Milligan, 202 N.J. Super. at 351, 495 A.2d 132.
Our decision in Milligan was affirmed by the Supreme Court at 104 N.J. 67, 514 A.2d 1316 (1986), substantially for the reasons expressed by us. However, Justice Clifford dissented and filed a comprehensive opinion in support of his conclusion that a defendant could be charged with reckless manslaughter and that the trial court would be obliged to charge the jury on death by auto as a lesser included offense. Justice Clifford concluded that to establish reckless manslaughter, proof would be required of "acts of recklessness in addition to defendant's reckless driving of his automobile." The justice said he saw "reckless manslaughter as encompassing reckless conduct quantitatively greater than the recklessness contemplated in a death-by-auto charge and qualitatively less than the recklessness required to support an aggravated manslaughter case." Id. at 73, 514 A.2d 1316.
Subsequent to the Milligan decision, the Legislature amended N.J.S.A. 2C:11-5 by the addition of paragraph d, which reads as follows:
d. Nothing herein shall be deemed to preclude, if the evidence so warrants, an indictment and conviction for manslaughter under the provisions of N.J.S. 2C:11-4. If an indictment for manslaughter is brought in a case involving the operation of a motor vehicle, death by auto shall be considered a lesser-included offense.
The Assembly Judiciary Committee Statement reads as follows:
This bill provides that nothing in the death by auto statute shall be construed to preclude an indictment and conviction for manslaughter, if the evidence so warrants. If manslaughter is charged in a case involving the operation of a motor vehicle, death by auto is to be included a lesser included offense.
In State v. Milligan, 202 N.J. Super. 336 [495 A.2d 132] (App.Div. 1985), aff'd, 104 N.J. 67 [514 A.2d 1316] (1986), the New Jersey Supreme Court ruled that criminal defendants could not be charged with both manslaughter and death by *577 auto in cases involving vehicular homicide. This bill is intended to reverse that decision.
Defendant in this case contends that the statute as amended and supplemented is unconstitutional as violative of his rights of due process and equal protection because the language is impermissibly vague and incapable of being applied in a consistent or logical manner with respect to similarly situated persons.
Initially, we point out that the issue must be addressed as one of plain error since defendant's counsel did not object to the initial charge nor to the two supplemental charges. See R. 1:7-2 and R. 2:10-2. Thus, defendant is required to establish "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970). In our review we must examine the jury charge in its entirety to determine its overall effect. State v. Marshall, 123 N.J. 1, 135, 586 A.2d 85 (1991) (citing State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973)).
In his initial charge to the jury, the trial judge explained the elements of aggravated manslaughter, in the course of which he defined "recklessly" in terms of the definition contained in the Code in N.J.S.A. 2C:2-2b(3). As to the third element, the judge adequately explained the necessity of proving that defendant recklessly caused death "under circumstances manifesting extreme indifference to human life."[1] Defendant concedes *578 that the charge as to aggravated manslaughter of which he was acquitted was adequate.
The judge then proceeded to charge the lesser included offenses, saying:
The law says a person is guilty of manslaughter if a person recklessly causes the death of another human being. A person recklessly causes the death when he consciously disregards a substantial and unjustifiable risk that death will result from his conduct.
In other words, the description is almost the same as that in aggravated manslaughter with the exception that his conduct under aggravated manslaughter must be that he acted under circumstances that manifested extreme indifference to human life. So in other words, the first portion of that charge would apply to what we call reckless manslaughter. In other words, that the risk must have been [of] such a nature and degree that considering the nature of the purpose of a person's conduct and the circumstances known to him that its disregard involved a gross deviation from the standard of conduct that a reasonable person would observe in the situation.
Then again, you have the right to consider a further lesser charge, if in your opinion you desire to do so. That is death by auto. Now, criminal homicide constitutes death by auto when it is caused by driving a vehicle recklessly. So that in order for you to find Mr. Jiminez guilty of this lesser included offense, the State has to prove the following essential elements of this crime beyond a reasonable doubt.
We have Number 1, of course that he was driving the vehicle. Number 2, that he caused the death of these victims and he caused those deaths by driving the vehicle recklessly. So that again, you have the State has to prove beyond a reasonable doubt that you have to find that the victim would not have died except for his conduct and that again, recklessly is the same as I've charged you before and that it is when he consciously disregarded a substantial and unjustifiable risk that death would result from his conduct.
In order for you to find that he drove the vehicle recklessly, the State has to prove beyond a reasonable doubt that the defendant was aware that his conduct created a substantial and unjustifiable risk of death. That he consciously *579 disregarded that risk and that his disregard was a gross deviation from the way a reasonable person would have conducted himself.
Defense counsel objected that the judge did not cover unanimity of the verdict and that the case had been tried basically on the question of whether defendant was the driver or a passenger. As a result, the following colloquy occurred:
THE COURT: I stressed in death by auto you had to find he is the driver.
MR. HARLEY [defense counsel]: It didn't come out in the other two because that's technically a little broader and they don't have to be a driver to be guilty of manslaughter.
THE COURT: You want me to stress the important thing in the case is whether he was the driver.
MR. HARLEY: In this case because it involves an auto which is also an element you talk about being the actor, but maybe it could be a little clearer in those points.
The judge then recharged the jury that if they found Mr. Jiminez was not the driver the case is over. He also gave the standard charge that the verdict must be unanimous.
After the jury had deliberated for awhile, the foreman sent the judge a note saying the jury would need another explanation of the difference between aggravated and reckless manslaughter, and death by auto, in response to which the judge gave the following charge:
Members of the Jury, I have your note which reads, We need another explanation of the difference between aggravated, reckless and death by auto. I shall do that.
Aggravated manslaughter requires certain elements and reckless manslaughter recognizes certain elements, one step below that and of course death by auto does likewise. The distinction is on aggravated manslaughter the State has to prove that this defendant caused the deaths of these victims. That he did so recklessly and he did this under circumstances manifesting an extreme indifference to human life. So that you have to show, the State has to prove beyond a reasonable doubt that these victims would not have died except for what the defendant did.
With respect to the second element, in order to find that he acted recklessly in causing their deaths, you must find that he was aware of and consciously disregarded a substantial and justifiable [sic] risk that death would result from his conduct. The risk must be of such a nature and degree that considering the nature and purpose of his conduct and the circumstances known to him, his disregard of that risk is a gross deviation from the standard of conduct that a reasonable person would follow in the same circumstances.

*580 In other words, you must find that the defendant was aware of and consciously disregarded the risk of causing death. If you find that he was aware of and disregarded the risk of causing the death, you must determine whether that risk that he disregarded was substantial and unjustifiable.
So that in doing so you must consider the nature and purpose of the person's conduct and the circumstances known to him and you must determine whether in light of those factors his disregard of that risk was a gross deviation from the conduct that a reasonable person would have observed in that situation.
Now, that would apply to reckless manslaughter but in aggravated manslaughter the additional factor is that you must find that he acted under circumstances that manifested an extreme indifference to human life. Now, that phrase does not focus on his state of mind, but rather on the circumstances under which you find he acted.
The State must prove that the defendant acted in a way that showed he was ultimately indifferent as to whether or not the victims lived or died. That is he must have acted in a way that showed that he did not care if someone was killed.
So with respect to aggravated manslaughter, the defendant must have acted in a way under circumstances involving a probability of death. So those are the three elements of aggravated manslaughter. On reckless manslaughter, the first two are the ones that you are to be concerned with. Namely, the causing of death and that he recklessly did cause that death.
Again, in order for you to find that he was, that he acted recklessly, the State must first prove beyond a reasonable doubt that he was aware of this substantial and unjustifiable risk and must prove that he consciously disregarded it, that risk and that for you to find that he acted recklessly, you must find the disregard was a gross deviation from the way a reasonable person would have conducted himself in that situation.
In other words, the charge as to manifesting extreme indifference to the value of human life is not set forth in the reckless manslaughter. On death by auto, the statute merely says that the State has to prove one, that he was driving the car, that he caused the death and that simply by driving recklessly that would be sufficient to underline the elements necessary in death by auto.
I trust I've explained it to you, you may continue with your deliberations.
After further deliberation, the jury sent out another note stating, "There are still a few individuals who are confused about death by auto and reckless manslaughter. Could you please explain one more time."[2] The judge then proceeded to give the following supplemental charge to the jury:

*581 THE COURT: All right. That being the case, your request is still a few individuals who are confused of death by auto and reckless manslaughter. Please explain one more time.
On reckless manslaughter the State has to prove as to the law a person is guilty of manslaughter if a person recklessly caused the death of another human being. A person recklessly causes the death when he consciously disregards a substantial and unjustifiable risk that death will result in [sic] his conduct. The risk must be of such a nature and degree that considering the nature and purpose of the actor's conduct and the circumstances known that its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.
Reckless manslaughter contemplates the use of an instrumentality as a dangerous instrumentality. Death by auto specifically refers to the driving of a vehicle. The same recklessness applies to both. Thank you.
Thereafter, the jury returned with its verdict finding defendant not guilty of aggravated manslaughter, but guilty of reckless manslaughter.
The State argues that, although the jury instructions were "not a paragon of clarity," State v. Masino, 94 N.J. 436, 447, 466 A.2d 955 (1983), the jurors were apprised, at a minimum, that death by auto was a lesser crime than reckless manslaughter, and a conviction of death by auto could be sustained by a finding beyond a reasonable doubt that defendant engaged in reckless driving that caused the fatal crash resulting in the victims' ultimate death. Relying upon Justice Clifford's dissenting opinion in State v. Milligan, the State argues that the jurors had to know that the evidence needed to sustain a conviction under N.J.S.A. 2C:11-5a "would fall short" of the proof needed for a reckless manslaughter conviction and that causing death "simply by driving recklessly," while sufficient for a death-by-auto conviction, was not enough to satisfy the recklessness requirements of N.J.S.A. 2C:11-4b(1). We disagree.
It is obvious that the distinction between the recklessness required for aggravated manslaughter and that necessary for reckless manslaughter is clear because of the addition in the aggravated manslaughter section of the language "under circumstances manifesting extreme indifference to human life." The clarity of this distinction is reflected by the jurors' omission *582 from its second request of a further explanation of that distinction as well as their acquittal of defendant on that charge. The more difficult question is whether the jury was appropriately apprised of the quantitatively greater recklessness contemplated for manslaughter than that required for death by auto to which Justice Clifford referred.
The supplemental paragraph d added to N.J.S.A. 2C:11-5 after State v. Milligan is also "not a paragon of clarity." From the committee statement we assume it intends to reverse the Milligan decision. In the absence of specific legislative guidance, we find it fair to read the legislative rejection of Milligan as an endorsement of the dissenting view expressed by Justice Clifford.
In addition to the death by auto statute, our Legislature has also addressed reckless driving as a motor vehicle offense in N.J.S.A. 39:4-96 which provides:
A person who drives a vehicle on a highway heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of reckless driving.[3] (footnote added)
If such reckless driving results in a death it becomes criminal homicide under the death by auto statute, N.J.S.A. 2C:11-5. The history of the evolution of that statute is extensively set forth in both our opinion and Justice Clifford's dissenting opinion in Milligan. No useful purpose would be served in repeating that here. The offenses of aggravated manslaughter and reckless manslaughter, of course, apply to criminal homicides committed in a variety of ways, not only driving a vehicle.
In State v. Potts, 200 N.J. Super. 488, 491 A.2d 818 (Law Div. 1985), the judge decided that the defendant could be indicted for aggravated manslaughter and either manslaughter or death by auto. Although we decided in State v. Milligan "after examination of the legislation and its history, that a homicide resulting from reckless driving may only be prosecuted *583 under N.J.S.A. 2C:11-5, the death by auto provision," 202 N.J. Super. at 338, 495 A.2d 132, we did not preclude a charge of aggravated manslaughter. Under the amendment to N.J.S.A. 2C:11-5 with the addition of paragraph d, the Legislature has decided that, where a death arises from reckless driving,[4] a defendant may be charged with either aggravated manslaughter and/or reckless manslaughter and, in either event, death by auto shall be an included offense.
Thus, the adoption of paragraph d as a supplement to N.J.S.A. 2C:11-5 requires the trial judge to craft a charge to a lay jury explaining the subtle and sophisticated distinctions between the concept of recklessness envisioned by the Legislature in death by auto as distinguished from the recklessness envisioned in the manslaughter statute.[5] It is obvious that the initial charge, as well as the two supplemental charges given by the trial judge in this case, do not even begin to explain the quantitative difference between the recklessness required for reckless manslaughter and that required for death by auto. By way of example we offer the following language[6] as suggestive of an explanation of that quantitative difference that might be given:
Let me differentiate between the reckless manslaughter statute and the death by auto statute. Standing alone, the reckless driving of an automobile which results in the death of another satisfies all of the requirements for violation of the death by auto statute provided you are so convinced beyond a reasonable doubt.

*584 A reckless manslaughter conviction, on the other hand, must be based upon proof beyond a reasonable doubt that the defendant engaged in additional acts of recklessness beyond the mere driving of an automobile in a reckless manner and that these additional acts of recklessness were also a cause of the victim's death. That is, causative acts of recklessness different in kind from, although not necessarily worse than, that involved in reckless driving. These additional acts of recklessness must be conduct of the defendant in addition to the recklessness in[7] his operation of the brown Pontiac which allegedly resulted in the deaths of Michael Rosario and Alexander Nozario. This is not to say that someone guilty of reckless manslaughter may not have been driving recklessly as well, so as to satisfy the requirements of death by auto, but to find a person guilty of reckless manslaughter where an automobile is involved, there must be acts of recklessness separate and apart from and in addition to the manner of driving the automobile, and these acts must have been a cause of the person's death.[8] (footnotes added)
The convictions of two counts of reckless manslaughter are reversed and remanded for a new trial. We conclude that our construction of N.J.S.A. 2C:11-5d renders it constitutional notwithstanding its vagueness. Further, while we have not addressed defendant's arguments relating to the sentences imposed on his convictions of reckless manslaughter, we wish to caution the trial judge that in the event of new convictions of reckless manslaughter, in sentencing, the judge should be careful not to count as aggravating circumstances those circumstances necessarily found by the jury to be recklessness beyond that shown in driving the automobile sufficient to elevate the crimes from death by auto to reckless manslaughter.
The conviction of theft by receiving stolen property and the sentence imposed thereon are affirmed. The convictions of death by reckless manslaughter are reversed and remanded for a new trial. Of course, defendant cannot be retried on the *585 charge of aggravated manslaughter upon which he has been acquitted.
NOTES
[1] As we noted in State v. Pindale, supra, this phrase is not defined in the Code, and we concluded that the drafters of the Code intended "in the case of a person who commits the homicide recklessly under circumstances manifesting extreme indifference to human life, to equate such conduct with knowing or purposeful conduct, so as to place the resulting homicide on a par with one committed knowingly or purposely, although providing for a somewhat lesser penalty." Pindale, 249 N.J. Super. at 279, 592 A.2d 300. We conceded that it was not clear what the Legislature intended by the phrase, noting its use in the section dealing with aggravated assault. In State v. Curtis, 195 N.J. Super. 354, 365, 479 A.2d 425 (App.Div.), certif. den., 99 N.J. 212, 491 A.2d 708 (1984), we concluded that:

[t]he ultimate question for the factfinder is whether the homicide was committed under circumstances involving a mere possibility of death or did the circumstances involve a probability of death. If the former, the verdict must be reckless manslaughter, but if the latter the verdict must be aggravated manslaughter.
[2] Since it was after four o'clock, the judge asked the jury, "Do you feel that by giving you this what you asked for there may be a chance of a verdict tonight or do you want me to have you come back tomorrow morning. You tell me what you think." The foreman responded, "Tonight."
[3] A lesser offense to that charge is careless driving, N.J.S.A. 39:4-97.
[4] Reckless driving and careless driving are lesser included offenses of death by auto, although they should not be given to the jury, but may be decided by the trial judge. State v. Muniz, 118 N.J. 319, 325, 571 A.2d 948 (1990).
[5] It is interesting to note that the "recklessness" described in the motor vehicle offense of reckless driving sounds qualitatively greater than "recklessness" as defined in the Code.
[6] This language has been adapted from a charge given by Judge Barnett E. Hoffman and approved by another part of this court in an appeal raising the same issue advanced in this case in State v. Niechwiadowicz, Docket No. A-6351-89T4, an unpublished opinion.
[7] Such additional acts of recklessness may precede, be contemporaneous with, or follow the recklessness in the operation of the vehicle. N.J.S.A. 2C:11-4b(1).
[8] We are requesting the Clerk to refer a copy of this opinion to the Criminal Model Jury Committee with the suggestion that it consider an analysis of this question and the adoption of a suggested form of charge.