**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0805-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SHADE COOPER,

    Defendant-Appellant.

_____

> Argued November 10, 2020 – Decided December 24, 2020
>
> Before Judges Yannotti, Haas, and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 16-12-1211.
>
> Jill R. Cohen argued the cause for appellant.
>
> Alexis R. Agre, Assistant Prosecutor, argued the cause for respondent (Scott A. Coffina, Burlington County Prosecutor, attorney; Alexis R. Agre, of counsel and on the brief).

PER CURIAM

Defendant was tried before a jury and found guilty on two counts of reckless manslaughter, in violation of N.J.S.A. 2C:11-4(b)(1). She appeals from the judgment of conviction dated September 12, 2018. We affirm.

I.

We briefly summarize the evidence presented at trial. On the evening of December 2, 2015, defendant and her husband Nicholas Cooper were at their home in North Hanover Township.[1] Earlier that day, defendant was told that her time in the United States military was ending and she would not be able to re-enlist in the service. Previously, Nicholas had moved out of the house and he told defendant he was living in Lumberton with a colleague from work. After defendant and Nicholas had dinner with their children, defendant went upstairs to bed.

Because Nicholas's driving privileges had been suspended, his ride came to the house to pick him up. Nicholas packed some of his belongings. Defendant saw Nicholas get into a small car driven by a female who was later identified as Jocelyn Redding. Jocelyn was driving a blue-gray Hyundai Elantra. When defendant observed Nicholas leave with a woman, she left the house and got into

---

[1] For ease of reference, we use first names to identify Nicholas Cooper and others involved in this matter.

A-0805-18T2

her black Chevrolet Cruz. The weather was cold and rainy. Defendant was wearing her nightgown. She did not have her coat, shoes, or cellphone. She asked her brother to look after the children.

While defendant was following Jocelyn's car, she called Nicholas using the OnStar phone in her car. Nicholas answered and asked defendant where she was. Defendant told Nicholas she was at a Dollar Store picking up medication. Nicholas told defendant she was lying and she was being annoying. He hung up. Defendant realized that Nicholas knew she was behind Jocelyn's car.

Defendant again called Nicholas. She told him to have Jocelyn pull over so they could talk. Nicholas asked Jocelyn to pull over, but she refused to stop. Defendant continued to follow Jocelyn's car. The pursuit went on for about ten miles and, at times, reached speeds of about fifty-eight to fifty-nine miles.

At the intersection on Route 547, defendant and Jocelyn approached a traffic light, and Jocelyn hit her brakes. Defendant said she "ran right into" Jocelyn's car because she "couldn't slow down fast enough." Jocelyn kept driving, however. Defendant asserted this was the only time her car struck Jocelyn's car, and she followed Jocelyn for another "four or five miles."

Defendant stated that "the only place that [she thought she] might have had a little trouble [driving]" was when she approached a traffic circle on

3

Georgetown Road at the intersection with York Road. Defendant stated that both drivers "bumped" the circle, which caused her to slow down. She continued to follow Jocelyn's car. Defendant stated that a quarter-mile further on the road, defendant and Jocelyn approached another curve, which caused defendant to "significantly" slow down. She was "not sure" of the distance between the cars as they approached the curve. She said, however, that there "was definitely a very good distance" between her car and Jocelyn's car.

Defendant testified that Jocelyn "obviously" went into the curve "too fast." Jimmy Spears was driving a red Toyota Tundra in the opposite lane of travel. As he approached the curve, he observed Jocelyn's car, which was behind three or four cars. Jocelyn's car went sideways, entered Spears's lane of travel, and collided with his truck. Spears noted that there was a distance of approximately one-car length between Jocelyn's car and the car behind it. Jocelyn's car went into a ditch in the woods on the side of the road.

Defendant did not see Jocelyn's car leave the roadway. She assumed Jocelyn's car collided with an oncoming truck. Defendant continued on Georgetown Road past the truck. She turned around after she realized "there's no way [Jocelyn's car] could have just disappeared." Defendant made a U-turn and pulled over to the side of the road.

A-0805-18T2

Defendant got out and helped Spears out of his truck. She returned to her car and called 9-1-1. Defendant was calm because she thought "it was going to be okay." While she was on the 9-1-1 call, defendant saw that Nicholas and Jocelyn were seriously injured. She began to scream. She testified that she was not angry during the car chase. She stated she was driving within a reasonable range of expected behavior on the roadway.

Kathy Owens-Oliver was a passenger in a car that came upon the scene after the collision. Owens-Oliver testified that it was dark, raining, wet, and cold, and that there was debris on the road. She heard a woman screaming in a car. She approached the woman, who identified herself as defendant. According to Owens-Oliver, defendant was "hysterical."

Defendant told Owens-Oliver that her husband had been in the car that crashed and she "should not have been chasing" him. She said that "[i]f he lives," he would never "forgive [her] for this." She asked Owens-Oliver how she was going to explain this to her children. Defendant also stated that she knew her husband was with "a woman" and she "just had to see her."

Officer Peter H. Appelman of the Bordentown Police Department (BPD) arrived on the scene. Appelman observed a car with two occupants in the woods and a red truck. He saw the driver of the truck walking around "aimlessly."

Patrolman Jeffrey Kotora of the BPD joined Appelman at the scene. Appelman then approached the car in the woods. He observed blood coming from Jocelyn's mouth, and Nicholas was slumped over her shoulder. Appelman spoke with defendant, who said she was not injured and not involved with the crash.

Appelman noted that defendant was shoeless. She was wearing a nightgown and kept looking at the car in the woods. Initially, defendant said she did not see the accident. After further questioning, defendant told Appelman her husband was in the car in the woods.

Appelman asked defendant to move her car to the shoulder of the road to clear the scene of the accident for emergency vehicles. When she moved her car, Appelman and Kotora noticed a grinding noise that was coming from the car. Appelman also saw what appeared to be a fresh paint transfer on defendant's car. Defendant said the damage occurred when her husband hit a deer. The officers grew suspicious. Appelman placed defendant in a patrol car for investigative detention and informed her of her Miranda rights.[2]

Brian Pesce, who at the time was a captain in the BPD, arrived at the scene about an hour after the accident was first reported. Pesce informed defendant her husband was dead. He ordered Appelman to take defendant to the station

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0805-18T2

for an interview.  At the station, Pesce conducted a taped interview with Detective Brian Miller from the Burlington County Prosecutor's Office. Defendant stated that Jocelyn "turned left and hit that red truck that was right there."  Defendant said she called her husband while she was following Jocelyn's car and overheard him pleading with the driver to pull over.

Defendant asserted that she "was not involved in that accident right there." She claimed Jocelyn turned and hit Spears's vehicle.  Defendant said she was a short distance behind Jocelyn's car, and she did not know how Jocelyn lost control.  Defendant stated that she "had complete control" of her car.

Danielle, Jocelyn's sister, testified that on the night of the accident, Jocelyn called her and said defendant "was hitting her car" as she was approaching Route 206.  She said she overheard Nicholas tell her sister to pull over because defendant "probably just want[ed] to talk."  She heard a loud noise and a scream, then the call went blank.  Danielle said she called 9-1-1 to report the accident.

The State's investigators extracted blue paint chips from the bumper of defendant's car.  They matched the composition of the paint from Jocelyn's car. In addition, black paint chips were extracted from the bumper on Jocelyn's car. An impression examination indicated that there were impressions from

7

defendant's license plate on the bumper of Jocelyn's car. The State contended this evidence showed that defendant's car struck Jocelyn's car twice.

The jury found defendant guilty of the reckless manslaughter of Jocelyn and Nicholas. Thereafter, the trial judge sentenced defendant to two five-year terms of incarceration, each with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The judge ordered that the sentences be served consecutively. The judge also imposed fines and penalties and ordered defendant to pay restitution in the amount of $6,200.

The judge entered a judgment of conviction dated September 12, 2018. On appeal, defendant presents the following arguments:

> POINT I
>
> THE INSTRUCTIONAL ERRORS IN THIS CASE, ALONE AND IN COMBINATION, DEPRIVED THE JURY OF PROPER GUIDANCE AND THE DEFENDANT OF DUE PROCESS OF LAW AND THE RIGHT TO A FAIR TRIAL. (Not Raised Below).
>
> A. THE JURY INSTRUCTION ON RECKLESS MANSLAUGHTER MISSTATED THE LAW CAUSING DEFENDANT TO BE CONVICTED OF A CRIME NOT CHARGED. (Not Raised Below).
>
> B. THE COURT FAILED TO CONFORM THE RECKLESS MANSLAUGHTER CHARGE TO THE

SPECIFIC FACTS OF THE CASE AS DIRECTED IN THE MODEL CHARGE. (Not Raised Below).

C. THE COURT FAILED TO INSTRUCT THE JURY ON THE SPECIFIC FACTS OF THE CASE, THE LAW IN REGARD TO CAUSATION AND THE SPECIFIC FACTUAL ALLEGATIONS OF EACH PARTY IN REGARD TO THEIR THEORY OF CAUSATION. (Not Raised Below).

D. THE COURT FAILED TO HELP THE JURY UNDERSTAND THE CRIMES CHARGED AND MERELY REITERATED THE CONFUSING CHARGE WHEN [THE JURY] HAD SEVERAL QUESTIONS DURING DELIBERATION[S] REGARDING RECKLESS MANSLAUGHTER. (Not Raised Below).

E. THE COURT FAILED TO PROVIDE PROPER JURY INSTRUCITONS WHEN ALLOWING A PLAYBACK OF THE EVIDENCE DURING DELIBERATIONS. (Not Raised Below).

POINT II

THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN A CONVICTION, UNDER THE FACTS OF THIS CASE[,] AS THE ONLY EVIDENCE OF RECKLESSNESS WAS [DEFENDANT'S] OPERATION OF THE MOTOR VEHICLE . . . .

POINT III

THE COURT ERRED BY FAILING TO STRIKE 404(B) EVIDENCE, WHEN THE ONLY PURPOSE OF ADMITTING THE EVIDENCE WAS TO UNDULY PREJUDICE THE JURY . . . .

9

POINT IV

THE STATE IMPROPERLY COMMENTED ON [THE] LAW WHICH WAS NOT PART OF THE STANDARD CHARGE THAT THE PARTIES AGREED TO USE, AND THE COURT FAILED TO STRIKE THE IMPROPER REFERENCE . . . .

## II.

We turn first to defendant's contention that the trial judge erred in his instructions to the jury on reckless manslaughter. Defendant argues that the judge erred by failing to instruct the jury on death by auto or vessel under N.J.S.A. 2C:11-5, as an included offense. We disagree.

"[A]ppropriate and proper charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). The trial court is required to give the jury "a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Id. at 159 (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). "Erroneous instructions on matters or issues that are material to the jury's deliberation are presumed to be reversible error in criminal prosecutions." State v. Jordan, 147 N.J. 409, 422 (1997) (citing State v. Warren, 104 N.J. 571, 579 (1986)).

A-0805-18T2

Where, as here, no objection is raised, we review the instructions for plain error and must determine whether the error was "clearly capable of producing an unjust result." State v. Alexander, 233 N.J. 132, 141-42 (2018) (citing R. 2:10-2). "The mere possibility of an unjust result is not enough." Id. at 142 (quoting State v. Funderburg, 225 N.J. 66, 79 (2016)). "Rather, '[t]he possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." Ibid. (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Here, the judge instructed the jury on reckless manslaughter. The Criminal Code states that criminal homicide constitutes manslaughter when "[i]t is committed recklessly." N.J.S.A. 2C:11-4(b)(1). The Criminal Code also states that

> A person acts recklessly with respect to a material element of an offense when he [or she] consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his [or her] conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.
>
> [N.J.S.A. 2C:2-2(b)(3).]

11

In this case, the judge instructed the jury in accordance with the model jury charge. See Model Jury Charges (Criminal), "Reckless Manslaughter (N.J.S.A. 2C:11-4b(1))" (rev. Mar. 22, 2004). The judge told the jury the State was required to prove beyond a reasonable doubt that defendant caused Nicholas's death and that she did so "recklessly." The judge explained that

> [a] person who causes another's death does so recklessly when she is aware of and consciously disregards a substantial and unjustifiable risk that death will result from her conduct. The risk must be of such a nature and degree that, considering the nature and purpose of defendant's conduct and the circumstances known to the defendant, her disregard of that risk is a gross deviation from the standard of conduct that a reasonable person would follow in the same situation.
>
> In other words, you must find that defendant was aware of and consciously disregarded the risk of causing death. If you find that the defendant was aware of and disregarded the risk of causing death, you must determine whether that risk that she disregarded was substantial and unjustifiable. In doing so, you must consider the nature and purpose of the defendant's conduct, and the circumstances known to the defendant. And you must determine whether, in light of those factors, defendant's disregard of that risk was a gross deviation from the conduct a reasonable person would have observed in defendant's situation.

The judge further explained that the State had to prove beyond a reasonable doubt that defendant caused Nicholas's death. The judge noted that "[c]ausation has a special meaning under the law." The judge stated that to establish causation, the

12

State had to prove two elements beyond a reasonable doubt, specifically, that but for defendant's conduct, Nicholas would not have died, and that his death was "within the risk of which the defendant was aware." The judge provided the same instruction with regard to the reckless manslaughter charge pertaining to Jocelyn's death.

Defendant argues, however, that the instruction was erroneous because the judge did not also charge the jury on the included offense of death by auto. In support of this argument, defendant relies upon State v. Jiminez, 257 N.J. Super. 567 (App. Div. 1992).

In Jiminez, the defendant was charged with first-degree aggravated manslaughter under N.J.S.A. 2C:11-4(a). Id. at 575. The trial judge instructed the jury on that offense, as well as the lesser-included offenses of second-degree reckless manslaughter under N.J.S.A. 2C:11-4(b)(1) and third-degree death by auto under N.J.S.A. 2C:11-5. Ibid. The court held that the instructions were confusing and did not accurately reflect the applicable law. Ibid.

We explained that in State v. Milligan, 202 N.J. Super. 336, 351 (App. Div. 1986), when a death results from reckless driving, a person may not be charged with reckless manslaughter and death by auto because the standard of conduct pertaining to both offenses was the same. The Supreme Court affirmed our decision. State v. Milligan, 104 N.J. 67 (1986). However, after the Supreme

13

Court's decision in Milligan, the Legislature amended the death by auto statute to provide that

> [n]othing herein shall be deemed to preclude, if the evidence so warrants, an indictment and conviction for manslaughter under the provisions of N.J.S.[A.] 2C:11-4. If an indictment for manslaughter is brought in a case involving the operation of a motor vehicle, death by auto shall be considered a lesser-included offense.
>
> [Jiminez, 257 N.J. Super. at 576; N.J.S.A. 2C:11-5(d), as amended by L. 1988, c. 75.]

However, in 1995, the Legislature again amended N.J.S.A. 2C:11-5. The 1995 amendments renamed the offense of death by auto or vessel as "vehicular homicide," upgraded the offense to a crime of the second degree, provided that in certain circumstances "vehicular homicide" shall be either a first-degree or third-degree offense, and deleted the language in N.J.S.A. 2C:11-5(d) that stated death by auto or vessel shall be considered a lesser-included offense of reckless manslaughter. L. 1995, c. 285.

We are convinced that the trial judge did not err by failing to instruct the jury on death by auto or vessel. The amendment to N.J.S.A. 2C:11-5 enacted in 1995 makes clear that death by auto or vessel should no longer be considered a lesser-included offense of reckless manslaughter. Indeed, as amended in 1995, the crime of reckless death by auto or vessel is, with certain exceptions, a

14

second-degree offense. N.J.S.A. 2C:11-5(b). Reckless manslaughter also is a second-degree offense. N.J.S.A. 2C:11-4(c). Thus, vehicular homicide is not a lesser-included offense of reckless manslaughter.

Moreover, N.J.S.A. 2C:1-8(e) provides that a trial judge "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." To justify the instruction, "a rational basis must exist in the evidence for a jury to acquit the defendant of the greater offense as well as to convict the defendant of the lesser, unindicted offense." Funderburg, 225 N.J. at 81 (quoting State v. Savage, 172 N.J. 374, 396 (2002)). Where the parties do not request an instruction on an included offense, the judge should only charge the offense "where the facts in evidence 'clearly indicate' the appropriateness of that charge." Ibid. (quoting Savage, 172 N.J. at 397).

The judge is not required to "sift through the entire record" to determine if "some combination of facts and inferences might rationally sustain" a conviction on a lesser charge. Ibid. (quoting State v. Choice, 98 N.J. 295, 299 (1985)). The judge only is required to provide the instruction if the evidence on the lesser charge is figuratively "jumping off the page . . . ." Id. at 81-82 (quoting State v. Denofa, 187 N.J. 24, 42 (2006)).

15

Here, the evidence presented at trial did not provide a rational basis for the jury to find defendant not guilty of reckless manslaughter and guilty of reckless death by auto. At trial, the State presented evidence showing defendant chased Jocelyn's car on a dark, rainy evening. The State alleged that during the chase, defendant's car struck Jocelyn's car twice, as shown by the damage to the license plate and the paint transfer, although defendant contended that she only struck Jocelyn's car once.

The State asserted that defendant's car was directly behind Jocelyn's car when Jocelyn approached the curve, entered the oncoming lane of travel, and collided with the truck, causing the deaths of Jocelyn and Nicholas. The State maintained defendant's actions collectively caused the deaths of Jocelyn and Nicholas, while defendant insisted the collision that caused their deaths was merely an accident.

We conclude that based on the evidence presented at trial, the judge was not obligated to instruct the jury sua sponte on death by auto or vessel as an included offense. Here, the primary focus of the State's case was upon defendant's actions in chasing Jocelyn's car on dark, wet roads. The evidence did not "clearly indicate" the need for an instruction on death by auto. Id. at 82 (quoting Denofa, 187 N.J at 42).

16

## III.

Defendant further argues that the trial judge erred by failing to instruct the jury that she could not be found guilty of reckless manslaughter unless she engaged in additional acts of recklessness independent of her reckless operation of her vehicle. Again, we disagree.

In Jiminez, we held that the amendments to N.J.S.A. 2C:11-5 enacted in 1995 required the trial judge to explain to the jury "the subtle and sophisticated distinctions between the concept of recklessness envisioned by the Legislature in death by auto as distinguished from the recklessness envisioned in the manslaughter statute." 257 N.J. Super. at 583. We suggested that when a defendant is charged with both offenses, the jury charge should include the following:

> Let me differentiate between the reckless manslaughter statute and the death by auto statute. Standing alone, the reckless driving of an automobile which results in the death of another satisfies all of the requirements for violation of the death by auto statute provided you are so convinced beyond a reasonable doubt.
>
> A reckless manslaughter conviction, on the other hand, must be based upon proof beyond a reasonable doubt that the defendant engaged in additional acts of recklessness beyond the mere driving of an automobile in a reckless manner and that these additional acts of recklessness were also a cause of the victim's death. That is, causative acts of recklessness different in kind

17

from, although not necessarily worse than, that involved in reckless driving.

[Id. at 583-84.]

Defendant also cites the model jury charge on reckless manslaughter, which includes a footnote stating that when the State alleges "that the defendant caused the death of another by operating a motor vehicle or vessel, death by auto or vessel 'shall be considered a lesser-included offense' under N.J.S.A. 2C:11-5d." Model Jury Charges (Criminal), "Reckless Manslaughter (N.J.S.A. 2C:11-4b(1))" n.2 (rev. Mar. 22, 2004). According to the model charge, the judge should explain that reckless manslaughter

> requires proof beyond a reasonable doubt that the defendant drove his/her vehicle (or vessel) recklessly, and also that he/she engaged in additional acts of recklessness, independent of his/her operation of the vehicle (or vessel), that contributed to the victim's death. Death by auto (or vessel), on the other hand, only requires proof beyond a reasonable doubt that the defendant recklessly drove his/her vehicle (or vessel), causing the death of another, and it requires no additional acts of recklessness.
>
> [Ibid.]

However, as stated previously, the 1995 amendments to N.J.S.A. 2C:11-5 provide that death by auto or vessel shall no longer be considered a lesser-included offense of reckless manslaughter, and the evidence in this case did not

"clearly indicate" that a charge on death by auto or vessel was appropriate. Funderburg, 225 N.J. at 82 (quoting Denofa, 187 N.J at 42). Thus, the judge was not required to explain to the jury the differences between reckless manslaughter and death by auto or vessel.

Moreover, the judge was not required to instruct the jury that she could not be found guilty of reckless manslaughter unless the State proved defendant drove her vehicle recklessly and engaged in additional acts of recklessness independent of her operation of her vehicle. The 1995 amendments to N.J.S.A. 2C:11-5 eliminated the need to distinguish between the sort of recklessness required to find a person guilty of reckless manslaughter and reckless death by auto.

We note that in State v. Jamerson, the Court stated that

> [t]he recklessness required for manslaughter is not the same as that required for death by auto. For reckless manslaughter, the State must prove beyond a reasonable doubt causative acts of recklessness that are different in kind from the acts involved in reckless driving that support a conviction for death by auto.
>
> [153 N.J. 318, 334 (1998) (citing Jiminez, 257 N.J. Super. at 584).]

Jamerson did not, however, discuss the 1995 amendments to N.J.S.A. 2C:11-5 and its decision pertained to pre-1995 events. See Cannel, New Jersey Criminal Code Annotated, cmt. 3 on N.J.S.A. 2C:11-5 (2020).

We also note that in State v. Pigueiras, 344 N.J. Super. 297, 306-13 (App. Div. 2001), we considered the adequacy of a jury charge on the degree of recklessness required for aggravated assault. We cited Jamerson and Jiminez and observed that "where there are two offenses each with recklessness alone and a quantitative difference is required, the jury must be given sufficient instructions as to those additional acts which would make clear the quantitative distinction." Id. at 312.

However, the reasoning in Pigueiras does not apply here. Since reckless manslaughter is a second-degree crime and death by auto is generally a crime of the same degree, there is no "quantitative distinction" between the two offenses. Thus, the judge was not required to instruct the jury that the State had to prove defendant drove her vehicle recklessly and engaged in additional acts of recklessness independent of her operation of her vehicle.

Furthermore, defendant did not object to the instruction on reckless manslaughter, and she has not shown that the alleged error in the instruction constituted an error "clearly capable of producing an unjust result." Alexander,

233 N.J. at 141-42 (citing R. 2:10-2). At trial, the State presented more than enough evidence to show that in chasing Jocelyn and Nicholas on the evening of December 2, 2015, defendant engaged in additional acts of recklessness independent of her reckless operation of her vehicle. Defendant has not shown that the jury was likely to reach a different verdict on reckless manslaughter if the judge had provided the instruction defendant contends was required.

Defendant also argues that the judge erred by failing to respond appropriately to questions presented by the jury during deliberations. The record shows that the jury asked the judge to explain an element of reckless manslaughter, specifically causation. After discussing the matter with counsel, the judge referred the jury back to his initial instructions. The judge added that

> when you're talking about the kind of injury or harm that's the probable result of the defendant's conduct, whether something is too remote, too accidental or too dependent on another's volitional act, the [c]ourt is going to ask you to look into your experience, your knowledge and common sense to analyze those factors.

The jury apparently was satisfied with the court's clarification of the instruction and asked no additional questions regarding this aspect of the instruction. Therefore, we reject defendant's contention that the jury had a difficulty with the charge as a whole and with the issue of whether she caused the deaths of Nicholas and Jocelyn.

21

Defendant further argues that the judge erred by failing to provide an instruction to the jury after the judge granted the jury's requests for playbacks of the audio recording of defendant's OnStar calls and the video recording of her police interview. Defendant contends that because an instruction was not given, there was "an extreme likelihood" the jury placed "greater significance" and gave "greater weight" to these playbacks as evidence.

A trial judge "should ordinarily grant a jury's request to play back testimony." State v. Miller, 205 N.J. 109, 122 (2011) (citing State v. Wilkerson, 60 N.J. 452, 460 (1972); State v. Wolf, 44 N.J. 176, 185 (1965)). However, "[j]udges should take precautions to prevent juries from placing undue emphasis on the particular testimony that is replayed." Id. at 123 (citing State v. Michaels, 264 N.J. Super. 579, 644-45 (App. Div. 1993)).

When the evidence is replayed, the trial judge "should instruct jurors to consider all of the evidence presented and not give undue weight to the testimony played back." Ibid. The model jury charge states that

> [m]embers of the jury you have requested a playback of testimony of [name of witness(es)]. The recorded testimony has been played for you. In your deliberations, you are instructed to consider all of the evidence presented, and not give undue weight to the testimony you have heard [and seen] played back.

[Model Jury Charges (Criminal), "Playback of Testimony" (approved Apr. 16, 2012).]

Defendant does not argue that the judge erred by playing back the recordings of her OnStar calls and her police interview. She contends, however, that the judge erred by failing to instruct the jury that it must not give "undue weight" to this evidence. There is nothing in the record which supports the conclusion that the jury may have given "undue weight" to the evidence played back.

Here, the judge should have provided the instruction required by Miller, even though defendant did not request it. However, based on our review of the record, we are convinced that the judge's failure to instruct the jury on the playbacks was not an error "clearly capable of producing an unjust result." R. 2:10-2.

V.

Defendant further argues that the State failed to present sufficient evidence to sustain her convictions for reckless manslaughter. She contends the State failed to present any evidence that she engaged in acts of recklessness other than recklessness related to her operation of her motor vehicle.

At trial, the State presented sufficient evidence to establish beyond a reasonable doubt all of the elements of both counts of reckless manslaughter.

23                                                              A-0805-18T2

As we have explained, the evidence shows that after defendant saw Nicholas enter the car with a woman, she dashed out of her house in her nightgown, got into her car, and began to pursue Jocelyn's car. Defendant admitted that she pursued Jocelyn's car to see whom Nicholas was riding with. She acknowledged that she should not have been pursuing Nicholas and Jocelyn.

Defendant chased Jocelyn's car on wet roads for about ten miles, traveling at times at speeds of up to fifty-nine miles per hour. There was evidence that defendant's car may have struck Jocelyn's car twice. Using the OnStar device in her car, defendant phoned Nicholas and asked him to have Jocelyn stop so that she could speak with him.

Jocelyn continued to drive on and according to defendant, was driving too fast when she entered a curve. Jocelyn lost control of her car, entered the lane of oncoming travel, and collided with the truck. The car left the roadway, entered the woods, and landed in a ditch. Jocelyn and Nicholas suffered fatal injuries in the crash.

Thus, the State presented sufficient evidence to establish the elements of reckless manslaughter in N.J.S.A. 2C:11-4(b)(1). In this case, the State was not required to prove defendant "engaged in additional acts of recklessness beyond the mere driving of an automobile in a reckless manner and that these additional

acts of recklessness were also a cause of the victim's death." Jiminez, 257 N.J. Super. at 584. There was, however, sufficient evidence to support the conclusion that defendant drove her vehicle recklessly and also engaged in additional acts of recklessness in her relentless pursuit of Jocelyn's car.

## VI.

Defendant argues the judge erred by failing to strike evidence of certain bad acts or wrongs that was elicited by the State during her cross examination. She contends the evidence was not admissible under N.J.R.E. 404(b) and the sole purpose for its admission was to unduly prejudice the jury.

N.J.R.E. 404(b)(1) does not permit the admission of evidence of other crimes, wrongs, or acts "to prove a person's disposition in order to show that on a particular occasion the person acted in accordance with such disposition." Such evidence may, however, "be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.RE. 404(b)(2). In determining whether to admit evidence of

another crime, wrong or act, the trial court must apply the analysis established in <u>State v. Cofield</u>, 127 N.J. 328, 338 (1992).[3]

At trial, defendant testified on direct examination that she had been in the United States Air Force. She said she had a physical condition which was part of the reason she was no longer in the military. Defendant testified that she had received a "military disability determination." She acknowledged that she could not return to the military even if she wanted to do so.

On cross-examination, the prosecutor asked defendant if on the day of the accident, she had signed a document indicating that her commanding officer informed her she was going to receive a "nonjudicial punishment." Defense counsel objected to the question. After hearing argument outside the presence of the jury, the judge sustained defendant's objection. The prosecutor then continued his cross examination.

We reject defendant's contention that the judge erred by failing to strike this "evidence." Defendant contends evidence regarding the "military disability determination" was not admissible under N.J.R.E. 404(b). However, defendant never answered the question and the question was not evidence. Although the

---

[3] The usefulness of the second <u>Cofield</u> prong "is limited to cases that replicate the circumstances in <u>Cofield</u>[,]" which related to the possession of drugs. <u>State v. Williams</u>, 190 N.J 114, 131 (2007).

A-0805-18T2

judge probably should have instructed the jury to disregard the question, defendant has not shown she was unduly prejudiced by the question. We conclude the error was not "clearly capable of producing an unjust result." R. 2:10-2.

VII.

Defendant further argues that the assistant prosecutor improperly commented on the law in his closing argument. Defendant cites the following remarks:

> [W]hen we talk about the word risk, I want to point one thing out. Risk that death will result from her conduct[.] She doesn't need to think that it's certainly going to result or it's probably going to result. A New Jersey Supreme Court case talks about the possibility of death. I don't need to prove to you that she thought that her actions that night, the risks she [was] taking would certainly or probably result in those peoples' death, those victims' death. But merely that she disregarded only a possibility of causing that.

Defendant contends the prosecutor misstated the law by using the word "possibility" rather than "probability." See Jamerson, 153 N.J. at 336 (citing N.J.S.A. 2C:2-3(c)).

"[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive [the] defendant of a fair trial." State v. Timmendequas, 161 N.J. 515, 575 (1999) (citing State v.

27

Chew, 150 N.J. 30, 84 (1997)).  "To justify reversal, the prosecutor's conduct must have been clearly and unmistakably improper, and must have substantially prejudiced [the] defendant's fundamental right to have a jury fairly evaluate the merits of his [or her] defense."  State v. Nelson, 173 N.J. 417, 460 (2002) (alterations in original) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)).

We are convinced the prosecutor's statements regarding the law were not "clearly and unmistakably improper" and did not "substantially prejudice" defendant's right to a fair trial.  As noted, the judge told the members of the jury he would instruct them on the legal principles they must apply in reaching their verdict.  We have no reason to assume "the jury did not faithfully follow" the court's instruction.  Nelson, 173 N.J. at 447 (quoting State v. Manley, 54 N.J. 259, 271 (1969)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0805-18T2